755 N.W.2d 47 (2008)
276 Neb. 437
Jamie GAVIN, Appellant,
v.
ROGERS TECHNICAL SERVICES, INC., Appellee.
No. S-07-465.
Supreme Court of Nebraska.
August 22, 2008.
*50 Kathleen M. Neary, of Vincent M. Powers & Associates, for appellant.
Sean J. Brennan, of Brennan & Nielsen Law Offices, P.C., Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*51 McCORMACK, J.

NATURE OF CASE
This case presents an appeal from a summary judgment entered against appellant, Jamie Gavin, in a suit involving alleged sexual harassment by Gavin's supervisor. Gavin alleged that the harassment resulted in a hostile work environment and her constructive discharge. In granting the employer's motion for summary judgment, the district court determined that Gavin failed to make a prima facie case that her working conditions were so intolerable that a reasonable person would have felt compelled to resign. We reverse the judgment of the district court, because we find genuine issues of material fact as to both the hostile work environment and constructive discharge claims.

BACKGROUND
In April 2005, Gavin was hired by Rogers Technical Services, Inc. (RTSI), as a business manager and assistant to William Keith Rogers, president of RTSI. Gavin was scheduled to begin work at 7 a.m. on Monday, Wednesday, and Friday and at 8 a.m. on Saturday. Typically, Gavin would report to work at Rogers' apartment. Gavin was expected to let herself into the apartment with a key Rogers gave to her and go to an office located in a second bedroom. She typically worked in the apartment office for a short time before she and Rogers went out to breakfast. They would then travel to RTSI's manufacturing facilities in Friend, Nebraska, where they would work most of the rest of the day.
Rogers and Gavin always traveled to the Friend facilities together, and Rogers always paid for the breakfasts, which Gavin called a "welcomed benefit." Rogers told Gavin that he wanted her to travel with him between Lincoln, Nebraska, and Friend because "he gets tired." Additionally, Rogers has diabetes and he trained Gavin how to provide him with an insulin injection if he became incapacitated. At the end of the day, after returning from Friend, Gavin and Rogers would sometimes continue to work at Rogers' apartment. Gavin would usually go home "[b]etween six and eight."
Two or three days after Gavin began working for RTSI, she began feeling uncomfortable around Rogers. Gavin testified in her deposition that Rogers began "making inappropriate sexual comments" and "telling inappropriate sexual stories on a daily basis." Gavin further explained that their conversations "[a]lways had a sexual overtone, if they weren't outright about sex." On "several occasions [Rogers] would make the comment that nobody is hornier than he is." Rogers would also "always bring up ... this hot blond ... [f]rom his past."
On one occasion, Rogers told Gavin about a pool party where the wife of Rogers' former employer "had gotten this one hot blond to take him into the bathroom" to have oral sex. When Rogers started to describe the details of this encounter, Gavin "stopped the conversation" and told Rogers she was not comfortable hearing the story about the pool party. She told Rogers, "`Maybe I'm the only person left in this world with morals, but I think [it's] not right'" to talk that way.
Gavin testified further, "[Rogers] kept asking me questions about myself. At first I would just blow them off and then he kept asking me and prying into my personal life.... [H]e always had to be near me." According to Gavin, Rogers once told her about swelling in his testicles after deep sea diving. Rogers then explained to Gavin that the two of them "needed to be able to talk about personal things like this." When Rogers repeated *52 that they needed to "be more open with each other," Gavin "kind of felt the need to share." So she told Rogers, "I don't really have anything wrong with me except I have a fibroid tumor." Gavin thinks she may have specified that the tumor was on her uterus.
On another occasion, Rogers asked Gavin about her boyfriend and how he treated her. After Gavin explained to Rogers that her boyfriend had been unfaithful, Rogers commented, "Well, you're a hot girl, and if you were my girl, I'd treat you much better than him." At one point, Gavin told Rogers that she did not "like to hear about sexual things" and that she "didn't like being hit on and ... didn't like being called a hot girl." In response to this comment, "[Rogers] got really upset and he said there was something wrong with me because ... I didn't like being hit on and I didn't like being called a hot girl." Gavin also testified that on two occasions, she "told [Rogers] to stop the conversation, that it was disgusting," and that she did not "like talking about sex."
Gavin testified that she felt especially uncomfortable because RTSI's office was in Rogers' apartment. Gavin had suggested to Rogers that it would be more efficient to move the apartment office to empty space at the facility in Friend, but Rogers did not seem amenable to the idea. On the last Saturday Gavin worked for RTSI, she went to Rogers' apartment as usual at 8 a.m., knocked at the door, and unlocked the door with the key Rogers had given to her. When Gavin walked down the hallway toward the office, she saw Rogers sitting at his computer viewing "a scantily clad blond woman in neon." Rogers could only see that Rogers was wearing a T-shirt and socks. She could not tell for certain if Rogers was wearing any underwear or shorts, but he did not appear to be. Gavin stood there for a moment and then turned around and went home. Rogers never acknowledged Gavin's presence, and Rogers and Gavin did not discuss the incident.
On Monday, Gavin returned to work. Gavin explained that she was nervous and upset about the incident on Saturday and that she thought Rogers would want to have a conversation about the incident. Gavin arrived at Rogers' apartment at 7:15 a.m. Gavin "knocked loudly" twice at the door, used the key to open the door, and called out "Hey" after opening the door. As she walked toward the office, Gavin saw Rogers sleeping in a chair in the living room wearing what looked like only a pair of boxer shorts. The television was blaring loudly, and Rogers did not respond to Gavin's greeting. Gavin felt uncomfortable and left. Gavin never returned to work or communicated with Rogers again.
On cross-examination, Gavin admitted that Rogers never asked her to have sex with him, never asked to view any intimate part of her body, never asked her to let him touch her inappropriately, never specifically discussed her breasts or any other body parts, and never touched her inappropriately. Gavin admitted she told Rogers on only two occasions, during the 3 weeks she worked for him, that she did not want to talk about sexual subjects. During the second week that Gavin worked at RTSI, Gavin also told a RTSI manager that Rogers "tells a lot of stories and [that] it kind of made [her] uncomfortable." However, she "didn't specify and [the RTSI manager] didn't ask" her to elaborate about the topic of those "stories." Gavin did not make any other complaints to anyone else in the company.
On the basis of these facts, Gavin brought suit against RTSI, alleging sexual harassment and constructive discharge in violation of title VII of the Civil Rights Act *53 of 1964 (Title VII).[1] RTSI moved for summary judgment. The district court determined that Gavin had not pled a prima facie case for hostile work environment or constructive discharge. The court observed that Rogers' behavior was "chauvinistic, unprofessional, and immature," but that such conduct was not directed at Gavin and was not sufficient to support a hostile work environment claim. The court also noted that there was no evidence that Rogers intended to force Gavin to quit or that he should reasonably have foreseen that she would quit as a consequence of his conduct.

ASSIGNMENTS OF ERROR
Gavin assigns, consolidated and restated, that the district court erred in sustaining RTSI's motion for summary judgment because (1) genuine issues of material fact were in dispute and (2) RTSI was not entitled to judgment as a matter of law.

STANDARD OF REVIEW
[1] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[2]
[2] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court.[3]

ANALYSIS
[3] On appeal, Gavin argues that the district court erred in granting summary judgment to RTSI because there are genuine issues of material fact regarding her claims of hostile work environment and constructive discharge. Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4] We turn first to the hostile work environment claim.

HOSTILE WORK ENVIRONMENT
[4, 5] Title VII prohibits employers from discriminating against an employee based on the employee's sex.[5] Sexual harassment is a form of sex discrimination prohibited by Title VII.[6] Two theories of sexual harassment have been recognized by the courts: "quid pro quo" and "hostile work environment" harassment. Those cases in which the plaintiff claims that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands are generally referred to as "quid pro quo" cases.[7] These are distinguished from cases based on "bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment."[8] Here, we consider only hostile work environment sexual harassment.
*54 [6-9] To constitute a hostile work environment, harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.[9] Courts examine the totality of the circumstances to determine whether there is a hostile work environment, considering the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior unreasonably interfered with the employee's work performance.[10] To make a prima facie case for a hostile work environment based on sexual harassment, the plaintiff must show that (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the sexual harassment was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action.[11]
[10] The record, taken in the light most favorable to Gavin, indicates that she established the five elements of a prima facie case of hostile work environment. First, as a female, Gavin belongs to a protected group.[12] Second, there is evidence that Gavin was subjected to unwelcome sexual harassment. Conduct is considered "unwelcome" when the employee did not solicit or invite it and the employee regarded the conduct as undesirable or offensive.[13] In this case, Gavin described numerous sexually explicit comments Rogers made to Gavin during her employment at RTSI which she considered offensive. RTSI does not argue that Gavin, in any way, solicited or invited these remarks. In fact, Gavin testified that she had told Rogers that she did not "like to hear about sexual things," "didn't like being hit on," and "didn't like being called a hot girl." Finally, on one of her last days at work, Gavin was presented with the disturbing and uninvited scene of Rogers, apparently without pants, viewing a "scantily clad blond woman" on his office computer.
[11] The record also discloses sufficient evidence of the third element, that the sexual harassment was based on Gavin's sex. While alleged sexual harassment need not be explicitly sexual in nature,[14] the record is replete with plainly sexual behavior directed at Gavin, including Rogers' comments to Gavin about oral sex, the swelling of his genitals, and Gavin's physical appearance, as well as his aforementioned viewing of a "scantily clad blond woman" on an office computer during normal working hours. Rogers' conduct carries with it clear sexual overtones and permits an inference of gender-based harassment. A trier of fact could reasonably find that the harassment, because of its sexual nature, was based on Gavin's sex.
[12-15] The fourth element of Gavin's prima facie claim of hostile work environment *55 sexual harassment requires that the harassment affected a term, condition, or privilege of her employment. For sexual harassment to be actionable, it must be sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.[15] Isolated or trivial incidents generally will not be sufficient.[16] Considering the totality of the circumstances, the work environment must be both objectively and subjectively offensiveone that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.[17] Whether workplace harassment is severe, pervasive, and objectively offensive is a question of fact.[18]
The record here discloses that Gavin was subjected to acts of sexual harassment over her 3-week tenure at RTSI. Gavin found these incidents upsetting and testified that she was offended by Rogers' inappropriate and sexually explicit comments. There was sufficient evidence of improper conduct to present to the trier of fact the question of whether the alleged harassment affected a term, condition, or privilege of employment.
[16] The final element of a prima facie case for hostile work environment is that the employer knew or should have known of the harassment and failed to take proper remedial action. In this case, there is no dispute that Rogers was Gavin's supervisor as well as the "the corporate officer and/or majority shareholder and/or president" of RTSI at the time the alleged conduct occurred. Therefore, what Rogers knew or should have known is attributable to RTSI. When harassment is committed by an employer-owner, there is no difficulty with finding liability under Title VII, because the person perpetrating the harassment is the employer.[19] As already discussed, twice Gavin told Rogers that she considered the topics of Rogers' conversation and his comments about her to be unwelcome and sexually offensive. Therefore, Gavin has made a prima facie case that RTSI knew or should have known of the harassment and failed to take remedial action.
[17] Having considered the five elements of a prima facie case for a hostile work environment sexual harassment claim, we conclude that Gavin produced sufficient evidence to present her claim to the trier of fact. We determine, therefore, that the district court erred in granting RTSI's motion for summary judgment as to the hostile work environment claim. We turn now to whether the court was correct in granting summary judgment on Gavin's claim of constructive discharge. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.[20]

*56 CONSTRUCTIVE DISCHARGE
[18-22] Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit.[21] To prove constructive discharge, a plaintiff must demonstrate that (1) a reasonable person in her situation would find the working conditions intolerable and (2) the employer intended to force the employee to quit.[22] The element of intending to force the employee to quit is satisfied if the employer could have reasonably foreseen that the employee would quit as a result of its actions.[23] However, a reasonable employee has an obligation not to assume the worst and not to jump to conclusions too quickly.[24] And an employee who quits without giving her employer a reasonable chance to work out a problem has not been constructively discharged.[25]
In this case, we determine that the evidence presents a genuine issue of material fact concerning Gavin's constructive discharge claim. First, there is evidence that a reasonable person could find the working conditions at RTSI intolerable. As described above, the record indicates that Gavin was subjected to numerous offensive remarks of a sexual nature, as well as offensive behavior.
As to the second element of constructive discharge, although there is no clear evidence that RTSI or Rogers intended to force Gavin to quit, there is evidence that RTSI could have reasonably foreseen Gavin would quit as a result of the harassing conduct. For example, during the second week of her employment, Gavin told a RTSI manager that Rogers made her feel uncomfortable. Gavin also attempted to convey to Rogers, on at least two separate occasions, her discomfort with Rogers' conduct. Gavin's hasty departure after she saw Rogers, partially unclothed, looking at a "scantily clad blond woman" on his work computer could also be seen as notice to her employer that she might quit her job to avoid the environment to which she was being subjected.
Consequently, we conclude that there are genuine issues of material fact as to Gavin's constructive discharge claim. Based on the evidence, a trier of fact could find that Gavin was constructively discharged from RTSI. We determine, therefore, that the district court erred in granting RTSI's motion for summary judgment as to the constructive discharge claim.

CONCLUSION
For the foregoing reasons, we reverse the district court's entry of summary judgment in favor of RTSI and remand the cause to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] 42 U.S.C. § 2000(e) et seq. (2000 & Supp. V 2005).
[2] Alston v. Hormel Foods Corp., 273 Neb. 422, 730 N.W.2d 376 (2007).
[3] Coffey v. County of Otoe, 274 Neb. 796, 743 N.W.2d 632 (2008).
[4] Nebraska Coalition for Ed. Equity v. Heineman, 273 Neb. 531, 731 N.W.2d 164 (2007).
[5] 42 U.S.C. § 2000e-2(a)(1).
[6] See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).
[7] Id.
[8] Id. at 751, 118 S.Ct. 2257.
[9] Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004); Brenneman v. Famous Dave's of America, Inc., 507 F.3d 1139 (8th Cir.2007); Gordon v. Shafer Contracting Co., Inc., 469 F.3d 1191 (8th Cir.2006).
[10] Brenneman v. Famous Dave's of America, Inc., supra note 9: Nitsche v. CEO of Osage Valley Elec. Co-op., 446 F.3d 841 (8th Cir. 2006); Henthorn v. Capitol Communications, Inc., 359 F.3d 1021 (8th Cir.2004).
[11] See, e.g., Stuart v. General Motors Corp., 217 F.3d 621 (8th Cir.2000).
[12] See Lincoln County Sheriff's Office v. Horne, 228 Neb. 473, 423 N.W.2d 412 (1988).
[13] See, e.g., Moylan v. Maries County, 792 F.2d 746 (8th Cir. 1986).
[14] Smith v. St. Louis University, 109 F.3d 1261 (8th Cir.1997).
[15] See Meritor Savings Bank v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).
[16] See Moylan v. Maries County, supra note 13.
[17] Faragher v. Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); Delph v. Dr. Pepper Bottling Co. of Paragould, Inc., 130 F.3d 349 (8th Cir.1997).
[18] Chancellor v. Pottsgrove School Dist., 529 F.Supp.2d 571 (E.D.Pa.2008). See, also, O'Shea v. Yellow Technology Services, Inc., 185 F.3d 1093 (10th Cir.1999) (noting that severity and persuasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially question of fact).
[19] Burns v. McGregor Electronic Industries, Inc., 989 F.2d 959 (8th Cir.1993); 1 Mark A. Rothstein et al., Employment Law § 2.14 (3d ed. 1994).
[20] Papillion Rural Fire Prot. Dist. v. City of Bellevue, 274 Neb. 214, 739 N.W.2d 162(2007).
[21] Brenneman v. Famous Dave's of America, Inc., supra note 9.
[22] Id.; Tatum v. Arkansas Dept. of Health, 411 F.3d 955 (8th Cir.2005).
[23] Brenneman v. Famous Dave's of America, Inc., supra note 9; Wright v. Rolette County, 417 F.3d 879 (8th Cir.2005).
[24] Brenneman v. Famous Dave's of America, Inc., supra note 9.
[25] Id.; Duncan v. General Motors Corp., 300 F.3d 928 (8th Cir.2002).