756 N.W.2d 152 (2008)
276 Neb. 605
Marilynn EHLERS, Appellant,
v.
STATE of Nebraska, Appellee.
No. S-07-732.
Supreme Court of Nebraska.
September 26, 2008.
*153 Michael J. Elsken, of Nebraska Advocacy Services, Inc., for appellant.
Jon Bruning, Attorney General, and Michael J. Rumbaugh, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
Marilynn Ehlers was a resident of the Hastings Regional Center (HRC), which is operated by the Nebraska Department of Health and Human Services. Ehlers was physically assaulted by another resident and sustained injuries to her left hand and right knee. She sued the State of Nebraska for negligence pursuant to the State *154 Tort Claims Act, see Neb.Rev.Stat. §§ 81-8,209 to 81-8,235 (Reissue 2003, Cum. Supp. 2006 & Supp. 2007). The Adams County District Court sustained the State's motion for summary judgment. Ehlers appeals, asserting that the assault was foreseeable.

SCOPE OF REVIEW
[1] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Gavin v. Rogers Tech. Servs., 276 Neb. 437, 755 N.W.2d 47 (2008).
[2] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.

FACTS
On March 30, 2003, Ehlers, who has limited mobility due to polio, was a resident of HRC. She alleged that she was standing by a counter at the nurses' station when another resident, "L.S.," became agitated. L.S. stated, "Dan [an HRC employee] is staring at me.'" L.S. then allegedly pushed Ehlers to the floor and into a wall. Ehlers fractured her left hand and injured her right knee.
Ehlers filed a claim with the State Claims Board, which disallowed the claim. She then filed a complaint against the State, alleging that the State and its employees had been warned about the physically inappropriate actions of L.S. toward other HRC residents, but that the State and its employees failed to take reasonable actions to protect Ehlers. She alleged that the State knew or should have known L.S. posed an imminent threat of harm and that the State failed to protect Ehlers.
The State claimed immunity from suits arising out of assault or battery and alleged that any damages suffered were the result of the intervening criminal or negligent act of a third party. The State moved for summary judgment.
At a hearing, the State offered into evidence three affidavits. Carolyn Johnson worked as a psychiatric technician at HRC. She was overseeing breakfast in the day hall on the day of the incident. Her description of the incident differs from that of Ehlers, in that Johnson stated that Ehlers and L.S. were seated across the table from each other when Johnson observed a quick exchange of words between the two women. Johnson could not hear what was said, but she reported that "[s]uddenly, and without warning, L.S. got up and pushed [Ehlers] out of her chair, knocking her against the wall behind her and to the floor...." Johnson said that she immediately restrained L.S., as she had been trained to do, and that L.S. was placed in restraints and sent into seclusion.
Johnson stated that although L.S. had a history of "aggressive, assaultive behavior," she had been controlled and did not appear to be upset or agitated that morning, and that L.S. was entitled to have breakfast with the other patients. If L.S. had exhibited upset or agitated behavior, she would have been given breakfast away from the other patients. According to Johnson, "[t]he suddenness of the push and lack of any forewarning made any prevention of the assault by L.S. on [Ehlers] by HRC staff impossible."
The facility operating officer at HRC submitted an affidavit accompanied by a copy of HRC policies regarding patient *155 restraint and seclusion that were in effect on the date of the incident.
A psychologist at HRC reviewed the records of L.S. from her admission on March 26, 2003, to the date of the assault, March 30. The psychologist found no evidence of behavior that would indicate imminent dangerousness which would warrant the use of seclusion and/or restraints prior to the incident.
Ehlers offered her own affidavit, in which she stated that she was committed to HRC by a mental health board. She stated that the individuals working on her ward knew or should have known that she had a history of polio and had limited mobility. Ehlers said that on the day of the incident, she entered the common area at 7:55 a.m. In contrast to Johnson's affidavit, Ehlers stated that there was a counter at the nurses' station where coffee was provided and that L.S. was at the counter. At the time, there were between four and eight residents sitting in the day hall awaiting their breakfast trays.
Ehlers stated that Johnson was on duty with "Dan," whose last name is unknown. Dan ordinarily worked on another ward. He was at the desk at the entrance of the day hall, about 10 to 12 feet from where L.S. was standing. Neither Johnson nor Dan warned Ehlers about L.S.' exhibiting any aggressive or unusual behavior. While Ehlers was standing at the counter, L.S. began to show signs of agitation and said, "`Dan is staring at me.'" Ehlers alleged that Dan should have heard the comment and that Johnson may have heard it. The record does not reflect that Dan was ever identified or asked to provide an affidavit about the incident.
Ehlers said that staff failed to take action to redirect L.S. after she became visibly agitated and that staff did not protect Ehlers. Ehlers said she did not hear L.S. being redirected and was not herself directed away from L.S. When Ehlers responded to L.S., she was physically assaulted by L.S. Again in contrast to Johnson's affidavit, Ehlers stated that Dan physically restrained L.S. immediately after the assault and that Johnson went to Ehlers and told her not to move from where she had fallen on the floor.
Ehlers claimed that Dan had an opportunity to prevent the assault by intervention short of physical restraint or seclusion and that HRC staff could have reasonably protected her from assault by L.S., but failed to do so.
The district court sustained the State's motion for summary judgment, and Ehlers appeals.

ASSIGNMENT OF ERROR
Ehlers argues that the district court erred in finding that the evidence did not support her claim that the assault was foreseeable.

ANALYSIS
[3] In order to recover in a negligence action brought pursuant to the State Tort Claims Act, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. Bartunek v. State, 266 Neb. 454, 666 N.W.2d 435 (2003). There is no dispute that the State owed a duty to Ehlers, who was in the State's custody. The issue before us therefore is whether the State breached its duty to protect Ehlers and should therefore be held liable for her injuries.
[4] In the case at bar, the alleged negligence by the State was the failure to control the actions of another HRC resident. The duty of reasonable care generally does not extend to third parties absent other facts establishing a duty. Erickson v. U-Haul Internat., 274 Neb. 236, 738 *156 N.W.2d 453 (2007). The common law has traditionally imposed liability only if the defendant bears some special relationship to the potential victim.
[5] This court has adopted Restatement (Second) of Torts § 315 at 122 (1965), which provides:
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.
See Bartunek v. State, supra. See, also, Munstermann v. Alegent Health Immanuel Medical Center, 271 Neb. 834, 716 N.W.2d 73 (2006).
[6] In Bartunek, we noted that the parameters of § 315(a) are further defined by Restatement (Second) of Torts § 319 at 129 (1965), which provides that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." We stated that the illustrations provided in the Restatement "make plain that the phrase `takes charge' is intended to refer to a custodial relationship." Bartunek v. State, 266 Neb. at 462, 666 N.W.2d at 441.
At the time of her injuries, Ehlers was a resident of HRC, a state-operated institution. In its answer, the State admitted that Ehlers was in its custody at HRC. Thus, there is no dispute that there was a custodial relationship. The State does not contest that, as the custodian of patients at HRC, it owed a duty of ordinary care to protect patients and to prevent them from assaulting each other. However, the State argues that the scope of the State's duty is limited to any risks that are foreseeable and that it properly discharged its duty.
Restatement (Second) of Torts § 320 at 130 (1965) provides:
One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor
(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and
(b) knows or should know of the necessity and opportunity for exercising such control.
In a comment to § 320, the Restatement notes that the rule applies to "officials in charge of a state asylum or hospital for the criminally insane." Id., comment a. at 130. Thus, State employees at HRC have a duty to exercise reasonable care to control the conduct of third parties to prevent them from harming another resident if the employees know or should know of the need to exercise such control.
[7] Ehlers alleged that she had limited mobility and was in the custodial care of the State's agents and employees. While standing by a counter at the nurses' station at HRC, L.S., another resident, allegedly began to show signs of agitation and stated, "`Dan is staring at me.'" L.S. then allegedly pushed Ehlers to the floor and into a wall. Ehlers alleged that the *157 State's employees had been warned about physically inappropriate actions taken toward HRC residents, but that the employees allegedly failed to take reasonable actions to protect Ehlers. She also alleged that the State's agents and employees knew or should have known that L.S. posed an imminent threat of harm to Ehlers, but failed to act to protect her.
In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Gavin v. Rogers Tech. Servs., 276 Neb. 437, 755 N.W.2d 47 (2008). This court must decide whether the evidence presented was sufficient to establish a material issue of fact whether HRC staff knew or should have known L.S. was agitated to the extent that the State should have acted to protect Ehlers.
Viewed in the light most favorable to Ehlers and giving her the benefit of all reasonable inferences deducible from the evidence, we conclude that there is not a genuine issue of material fact in dispute. The evidence is insufficient to show that the State breached its duty to protect Ehlers from the actions of L.S. The affidavit of Ehlers is not sufficient to establish that HRC staff knew or should have known that L.S. was about to harm Ehlers and therefore should have immediately taken action to protect Ehlers from L.S. The person referred to as "Dan" in Ehlers' affidavit is not identified by full name, job title, training, or scope of responsibility. Without such information, a trier of fact could not reasonably conclude that "Dan," as an employee of HRC, saw or heard something which would have alerted him to the impending assault in time to prevent it.

CONCLUSION
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Id. Giving Ehlers the benefit of all reasonable inferences deducible from the evidence, we conclude no genuine issue of material fact exists whether the State knew or should have known that L.S. was about to attack Ehlers and therefore breached its duty to protect Ehlers. The district court did not err in granting summary judgment, and its decision is affirmed.
AFFIRMED.