758 N.W.2d 640 (2008)
276 Neb. 936
Dorothy M. LOVES, Appellant,
v.
WORLD INSURANCE COMPANY, a Nebraska corporation, Appellee.
No. S-07-1067.
Supreme Court of Nebraska.
December 19, 2008.
*641 Steven J. Riekes and Howard N. Epstein, of Marks, Clare & Richards, L.L.C., for appellant.
Mary Kay O'Connor and Pamela Epp Olsen, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., Lincoln, for appellee.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
In 2003, Dorothy M. Loves retired after working for World Insurance Company (World) for approximately 47 years. In this action brought under the Nebraska Wage Payment and Collection Act *642 (NWPCA),[1] the issue is whether she is entitled to be paid for unused sick leave which accrued during her employment. The district court for Douglas County resolved the issue in the negative, and we affirm.

BACKGROUND
Loves was employed by World from November 12, 1956, until her retirement on November 3, 2003. During her employment, World offered certain fringe benefits to its employees, including a sick leave plan. Prior to January 1, 1996, World's sick leave plan permitted employees to accumulate unused sick leave and cash out accrued but unused sick leave at termination or retirement.
On December 7, 1995, World sent a memorandum to all full-time employees explaining that effective January 1, 1996, the sick leave policy would change. Under the new policy, accumulated but unused sick leave would no longer be cashed out upon "termination" of employment. It could, however, be placed into an emergency reserve account for extended employee illness or disability. Any unused time would be forfeited. This new policy was included in employee handbooks dated May 4, 1998, and May 18, 2000, which specifically stated that "[u]nused personal and sick time can not be cashed in at time of termination." Loves acknowledged receipt of the revised policy and signed a notice to that effect on May 18, 1998.
Loves claimed that at the time of her November 2003 retirement, she had accumulated at least 794.35 unused hours of sick leave. Loves asked World to cash out her sick leave at the time of her retirement, but it refused to do so. Loves then filed this action, claiming at least $13,956.73 in compensation for the unused sick leave. World answered, alleging that its policy at the time of Loves' retirement disallowed the accumulation and cashing out of sick leave and that such a policy did not violate the NWPCA. World also alleged that Loves' claim was barred by the applicable statute of limitations.
Both parties moved for summary judgment with supporting evidence. The district court granted World's motion and denied Loves' cross-motion. It determined that Loves did not meet the conditions stipulated by the World sick leave policy in effect at the time of retirement, because she did not have an illness preventing her from working. Distinguishing our decision in Roseland v. Strategic Staff Mgmt.,[2] which held that earned but unused vacation time constituted wages within the meaning of the NWPCA, the court stated that "World's sick leave policy is not vacation time masquerading under another name, but a provision put in place by an employer for the benefit of employees unable to work due to illness." In further holding that Loves had no vested right to payment of sick leave accumulated prior to the 1996 change in World's policy, the district court concluded: "Even ignoring the fact that World reserved the right to amend or terminate any of its policies, the undisputed facts show that the statute of limitations has long since run on this particular claim."
Loves timely appealed from the district court's decision, and we moved the appeal to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[3]

*643 ASSIGNMENTS OF ERROR
Loves assigns that the district court erred in (1) granting World's motion for summary judgment and overruling her cross-motion and (2) holding that the statute of limitations barred her claim.

STANDARD OF REVIEW
[1] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4]
[2] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[5]
[3] When cross-motions for summary judgment have been ruled upon by the district court, the appellate court may determine the controversy that is the subject of those motions or may make an order specifying the facts that appear without substantial controversy and direct such further proceedings as it deems just.[6]
[4] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[7]

ANALYSIS
[5] The NWPCA requires an employer to pay "unpaid wages" to an employee who separates from the payroll "on the next regular payday or within two weeks of the date of termination, whichever is sooner."[8] A sick leave plan is considered a fringe benefit under the NWPCA.[9] The NWPCA defines "wages" as
compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis. Paid leave, other than earned but unused vacation leave, provided as a fringe benefit by the employer shall not be included in the wages due and payable at the time of separation, unless the employer and the employee or the employer and the collective-bargaining representative have specifically agreed otherwise.[10]
Applying these statutory provisions, we have held that a payment will be considered a wage subject to the NWPCA if (1) it is compensation for labor or services, (2) it was previously agreed to, and (3) all the conditions stipulated have been met.[11]
[6, 7] In the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning.[12] Under the plain language of § 48-1229(4) *644 quoted above, unused sick leave is not a part of wages payable to a separating employee unless there is a specific agreement otherwise. Such an agreement existed in Professional Bus. Servs. v. Rosno,[13] where the employee handbook provided, "`Any sick leave not used will be paid to the employee at the time of termination.'" But in this case, it is undisputed that at the time of Loves' retirement, the employee handbook provided that sick leave could be used "for employee illness or that of a dependent child" and that "[u]nused sick time cannot be carried over but will be placed in an emergency reserve account to be used for extended periods of illnesses, greater than 3 days, or disability." It also provided that "[u]nused personal and sick time can not be cashed in at time of termination. Any unused balance will be forfeited."
[8] Clearly, under § 48-1229(4), accrued but unused sick leave is treated differently than accrued but unused vacation leave for purposes of determining unpaid wages when employment ends. Other courts have recognized an employer's right to treat sick leave as a "contingent benefit due only in the event an employee misses work due to illness."[14] We conclude that the NWPCA does not prohibit an employer from providing a sick leave benefit which may be used only in the event of illness or injury and which has no monetary value upon termination of employment if it is not so used. In this case, the agreement of the parties at the time of Loves' retirement, as reflected in the employee handbook, contemplated a benefit of this nature. Loves did not contend that she was entitled to the value of sick leave based on a qualifying illness or injury, and she did not present any medical evidence to that effect.
[9] The remaining question is whether Loves was entitled to a "vested" sick leave benefit based upon World's pre-1996 policy. On this point, the record is quite sparse. The pre-1996 sick leave policy itself is not in the record. We have before us only two brief references to the policy: one in Loves' affidavit and the second in a copy of a December 7, 1995, memorandum that World issued to all full-time employees. This memorandum stated that effective January 1, 1996, there would no longer be a "cash out of benefits at termination, as i[s] the case under our current policy." The subsequent copies of the employee handbooks in the record, dated May 4, 1998, and May 18, 2000, reflect this policy change.
The 1998 and 2000 handbooks state that employment was at will, and there is no evidence that Loves ever had any other employment status with World. The handbooks also specifically reserve World's right to change its policies, and there is nothing in the record either restricting World's right to change its pre-1996 sick leave policy or supporting a claim that it created any vested contractual rights when it did so. The record reflects that Loves was informed of the 1996 change in the sick leave policy, but there is no indication that she protested or claimed any vested rights at the time. Courts have held that when an at-will employee continues working with knowledge of changed sick leave policies, the employee gives up any rights under a superseded policy.[15]
*645 We conclude that the record before us does not provide a basis for determining that World's pre-1996 sick leave policy created any vested contractual right entitling Loves to payment of unused sick leave at the time of her retirement in 2003. Accordingly, we need not address the statute of limitations issue presented in this appeal.

CONCLUSION
For the reasons discussed, we conclude that the district court did not err in granting World's motion for summary judgment and denying Loves' cross-motion. We therefore affirm the judgment of the district court in favor of World.
AFFIRMED.
WRIGHT, J., not participating.
NOTES
[1] Neb.Rev.Stat. §§ 48-1228 to 48-1232 (Reissue 2004).
[2] Roseland v. Strategic Staff Mgmt., 272 Neb. 434, 722 N.W.2d 499 (2006).
[3] See Neb.Rev.Stat. § 24-1106(3) (Reissue 1995).
[4] Ehlers v. State, 276 Neb. 605, 756 N.W.2d 152 (2008); Gavin v. Rogers Tech. Servs., 276 Neb. 437, 755 N.W.2d 47 (2008).
[5] Ehlers v. State, supra note 4.
[6] Builders Supply Co. v. Czerwinski, 275 Neb. 622, 748 N.W.2d 645 (2008).
[7] Borrenpohl v. DaBeers Properties, 276 Neb. 426, 755 N.W.2d 39 (2008); Scofield v. State, 276 Neb. 215, 753 N.W.2d 345 (2008); Niemoller v. City of Papillion, 276 Neb. 40, 752 N.W.2d 132 (2008).
[8] § 48-1230(2)(a).
[9] § 48-1229(3).
[10] § 48-1229(4) (emphasis supplied).
[11] Pick v. Norfolk Anesthesia, 276 Neb. 511, 755 N.W.2d 382 (2008).
[12] McClellan v. Board of Equal. of Douglas Cty., 275 Neb. 581, 748 N.W.2d 66 (2008).
[13] Professional Bus. Servs. v. Rosno, 268 Neb. 99, 115, 680 N.W.2d 176, 188 (2004).
[14] Teamsters, Local 117 v. NW Beverages, 95 Wash.App. 767, 768, 976 P.2d 1262, 1263 (1999). See, also, Simpson v. City of Blanchard, 797 P.2d 346 (Okla.App.1990).
[15] National Rifle Ass'n v. Ailes, 428 A.2d 816 (D.C.1981); Werden v. Nueces County Hosp. Dist., 28 S.W.3d 649 (Tex.App.2000); Gamble v. Gregg County, 932 S.W.2d 253 (Tex.App. 1996); Willets v. City of Creston, 433 N.W.2d 58 (Iowa App.1988).