768 N.W.2d 429 (2009)
278 Neb. 156
James L. SACK, appellant,
v.
Carlos CASTILLO, Jr., director of Nebraska Department of Administrative Services, appellee.
No. S-08-1278.
Supreme Court of Nebraska.
July 17, 2009.
*431 James L. Sack, pro se.
Jon Bruning, Attorney General, and Dale A. Comer, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
James L. Sack was employed by the State of Nebraska from December 9, 1974, through December 29, 2006, when he retired at the age of 62. Sack brought this claim against the director of the Department of Administrative Services (the State). Sack contends he was deprived of property rights when the State removed 2,786.83 hours of unused sick leave accrued from December 31, 1988, to December 31, 2005, and in excess of the statutorily allowable 1,440 hours. Sack also alleges that he *432 was not paid for 1,174.87 hours of unused sick leave upon his retirement. Sack claims the statutes requiring the State to remove unused sick leave in excess of the statutory maximum, Neb.Rev.Stat. §§ 81-1323 and 81-1324 (Reissue 2008), are unconstitutional because Sack had a vested property right in his sick leave. Sack further argues that Neb.Rev.Stat. §§ 81-1320 to 81-1326 (Reissue 2008) are special legislation and unconstitutional and that the district court erred in admitting legislative history into evidence. We affirm the decision of the district court.

FACTS
The facts of this case are undisputed. As noted, Sack was a permanent, full-time employee of the State from December 9, 1974, through December 29, 2006, when he retired at the age of 62. Sack was employed as a revenue audit manager and was not a part of any bargaining unit. Sack claims that his sick leave balance was reduced by a total of 2,786.83 hours from December 31, 1988, through December 31, 2005. At the time of his retirement, Sack's sick leave balance was 1,566.50 hours, and he was paid for 25 percent of those hours pursuant to §§ 81-1324 and 81-1325. The statutes governing the accumulation and use of sick leave were in place when Sack was hired and throughout his employment with the State.
The sick leave provisions that Sack complains of were enacted as 1973 Neb. Laws, L.B. 340, and have been codified at §§ 81-1320 to 81-1326. L.B. 340, at §§ 4 to 6, granted state employees certain sick leave benefits and provided as follows:
Sec. 4. The sick leave account [of state employees] shall be balanced as of December 31 each year. Sick leave shall be cumulative for not more than one thousand four hundred forty hours.
Sec. 5. All sick leave shall expire on the date of separation and no employee shall be reimbursed for sick leave outstanding at the time of termination, except as provided in this act.
Sec. 6. Each employee who is eligible for retirement under any existing state or federal retirement system shall, upon termination of his employment with the state by reason of retirement or voluntary resignation, in good standing, be entitled to payment of one-fourth of his accumulated unused sick leave, with the rate of payment based upon his regular pay at the time of termination or retirement.
Although portions of the 1973 bill have been amended, the pertinent provisions are largely the same and are currently set out in §§ 81-1323 to 81-1325.
Sack contends that because he "earned" his sick leave, divesting him of any unused sick leave was a violation of his property rights. Sack's argument is based on the premise that §§ 81-1323 to 81-1325 are in conflict with the Nebraska Wage Payment and Collection Act. Sack also contends that the statutes which provided for removal of his sick leave are special legislation in violation of the Nebraska Constitution and that the district court erred when it admitted the legislative history for L.B. 340 into evidence.

ASSIGNMENTS OF ERROR
Sack assigns that the district court erred when it granted the State's motion for summary judgment. Sack argues, consolidated and renumbered, that he had a vested right to all earned sick leave under the Nebraska Wage Payment and Collection Act and that §§ 81-1320 to 81-1326 constitute special legislation in violation of the Nebraska Constitution. Sack also assigns as error the district court's decision to allow as evidence the legislative history for L.B. 340.

*433 STANDARD OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1]
In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[2] When reviewing questions of law, an appellate court resolves the questions of law independently of the trial court's conclusions.[3]
Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the trial court.[4]

ANALYSIS

SACK DOES NOT HAVE PROPERTY RIGHT IN HIS SICK LEAVE
Sack argues that L.B. 340 conflicts with the Nebraska Wage Payment and Collection Act, Neb.Rev.Stat. §§ 48-1228 to 48-1232 (Reissue 2004). As previously noted, L.B. 340 was passed in 1973, the year before Sack was hired by the State, and controls the amount of sick leave that can be accumulated by state employees. Included in L.B. 340 is a provision that an employee cannot retain more than 1,440 hours of accumulated sick leave and that on December 31 of each year, sick leave is to be balanced to 1,440 hours if the employee has accumulated more.
Sack contends that the Nebraska Wage Payment and Collection Act, enacted in 1977, superseded L.B. 340 and that it granted him property rights in his accumulated sick leave. Because "sick leave" is considered part of fringe benefits under § 48-1229(3), Sack claims the provisions under L.B. 340 deprive him of the "compensation" that he had "earned." According to Sack, L.B. 340 and the Nebraska Wage Payment and Collection Act constitute a "`unilateral employment contract,' " and his accumulated sick leave is "deferred compensation" due to him at the time of his separation.[5] Although Sack acknowledges that he was aware of the sick leave policy as defined by L.B. 340 at the time he was hired, he contends that the Nebraska Wage Payment and Collection Act changed the sick leave policy in 1977 for at-will employees and repealed the pertinent sections of L.B. 340. We disagree.
Contrary to Sack's claims, there is no indication that the Nebraska Wage Payment and Collection Act repealed L.B. 340. Although the act and L.B. 340 both deal with sick leave granted to state employees, to the extent there is conflict between two statutes on the same subject, the specific statute controls over the general statute.[6] Clearly, L.B. 340 is the more specific of the two statutes dealing with accrual of sick leave. The Nebraska Wage Payment and Collection Act applies to all employers and any fringe benefits offered. L.B. 340 applies to state employees' accrual of sick leave and provides *434 more detail as to when and how an employee may accrue sick leave.
Furthermore, repeal of a statute by implication is not favored and will not be found unless the Legislature's intent makes another construction of the statute untenable.[7] As a result, in the absence of clear legislative intent, the construction of a statute will not be adopted which has the effect of nullifying or repealing another statute.[8] Finally, where general and special provisions of statutes are in conflict, the general law yields to the special, without regard to priority of dates in enacting the same.[9] There is no indication in the statutes that the Nebraska Wage Payment and Collection Act repealed L.B. 340.
We also note that our decision in Loves v. World Ins. Co.[10] gives employers, including the State, the power to dictate the conditions under which sick leave can be used. In Loves, a retiring employee sued for compensation for her accrued sick time.[11] When the employee was hired, there was a provision in the employee handbook that allowed compensation for all accrued and unused sick leave upon retirement. Approximately 8 years before the employee retired, however, the employer changed its policies to disallow compensation for unused sick leave.[12] This court found that the employment was at will, that the employee had no contract with her employer, and that there was no indication the employer did not have the power to change its policies. We stated that the Nebraska Wage Payment and Collection Act "does not prohibit an employer from providing a sick leave benefit which may be used only in the event of illness or injury and which has no monetary value upon termination of employment if it is not so used."[13] We also found that because the employee had continued her employment after the change in policies, she acquiesced to those changes. The same can be said of Sack, who acknowledges that he was aware of the sick leave policy when he was hired and that there was no reason for him to believe that he ought to be treated differently than any other State employee.

L.B. 340 Is NOT UNCONSTITUTIONAL
Sack contends that L.B. 340 is unconstitutional, largely because the provisions deprive him of a "property right" in his accumulated sick leave.[14] As the State points out, Sack bears a heavy burden to show that the statute is unconstitutional. Statutes are afforded a presumption of validity,[15] and the burden of establishing that a statute is unconstitutional is on the one attacking its validity.[16] All reasonable doubts will be resolved in favor of its constitutionality.[17]
*435 Sack claims that L.B. 340 is special legislation in violation of Neb. Const. art. III, § 18, because it applies only to state employees. According to Sack, §§ 4 to 6 of L.B. 340, codified at §§ 81-1323 through 81-1325, "arbitrarily and unreasonably set him and other state employees apart as inferior or second-class from all other employees in Nebraska that are subject to the [Nebraska] Wage [Payment and Collection] Act and are not employed by the [S]tate."[18]
Although Sack does not contest the "`rational basis'" for enacting a sick leave policy for state employees, he claims that the sick leave policy deprives him of his vested right in his accumulated sick leave.[19] In essence, Sack's argument is that he was allowed to accumulate more than the statutorily allowed 1,440 hours but that the State took those accumulated hours away at the end of each year from 1988 through 2005. Sack is referring to § 4 of L.B. 340, codified at § 81-1323, which requires the State to balance each employee's sick leave account on December 31 of every year.
In its order, the district court found that L.B. 340 did not constitute special legislation, because there was no arbitrary or unreasonable method of classification and it was not a closed class.[20] Sack conceded there was good reason for the State to create a system for its employees for accumulating and using sick leave. The class of "state employees" is neither arbitrary nor closed.
As we noted in Loves, employers have the right to restrict the use or payment of sick leave. The State, as an employer, has the right to restrict the use and payment of sick leave for its own employees. It follows that the class of "state employees" is not arbitrary. The class is also not closed, because every time someone begins to work for the State, that individual begins to accumulate sick leave as provided for under L.B. 340. Therefore, L.B. 340 does not contain an arbitrary or unreasonable method of classification, as is required to find that a statute constitutes special legislation.
Sack's argument that the statutes deprive him of a contractual property right also fails. First, the court must consider whether there has been an impairment of the contract, whether the actions of the defendant in fact acted as a substantial impairment of the contractual relationship, and whether that impairment was nonetheless permissible and legitimate.[21]
Sack agreed to the sick leave plan when he began working for the State, and he admitted as much in his brief. Sack was aware that he would not be able to accrue more than 1,440 hours of sick leave, and he was also aware that the sick leave balancing would occur on December 31 of every year. These provisions were a part of Sack's "employment contract" with the State from the beginning of his employment. Sack cannot show that the State took anything from him that he was promised or that his "contract" was impaired. Sack therefore cannot demonstrate that the State's formulation of its sick leave policy was not a permissible, legitimate use of its sovereign power.

DISTRICT COURT DID NOT ERR IN ADMITTING LEGISLATIVE HISTORY FOR L.B. 340
Sack argues that the district court erred when it admitted the legislative history for *436 L.B. 340 into evidence. The State had offered the legislative history to support its argument that L.B. 340 was not special legislation.
We have allowed courts to consider legislative history when determining whether a statute constitutes special legislation.[22] The exercise of judicial discretion is implicit in decisions to admit evidence based on relevancy or admissibility, and those decisions will not be overturned by an appellate court in the absence of an abuse of discretion.[23] The State concedes that the statute is unambiguous on its face and that therefore, the legislative history is not required to interpret it. However, the State argues that Sack invited the use of the legislative history when he claimed L.B. 340 was special legislation. We agree, and find that the district court did not err when it admitted the legislative history into evidence.

CONCLUSION
We do not find any merit to Sack's assignments of error. Sack was aware of the sick leave policy when he was hired by the State, and he acquiesced to those policies by accepting continued employment. Furthermore, Sack has not shown that L.B. 340 is unconstitutional or that he has been deprived of a property right.
AFFIRMED.
NOTES
[1] Hughes v. Omaha Pub. Power Dist., 274 Neb. 13, 735 N.W.2d 793 (2007).
[2] Id.
[3] Id.; Eggers v. Rittscher, 247 Neb. 648, 529 N.W.2d 741 (1995).
[4] Japp v. Papio-Missouri River NRD, 271 Neb. 968, 716 N.W.2d 707 (2006).
[5] Brief for appellant at 25-26.
[6] Soto v. State, 269 Neb. 337, 693 N.W.2d 491 (2005); Cox Nebraska Telecom v. Qwest Corp., 268 Neb. 676, 687 N.W.2d 188 (2004).
[7] See Hammond v. City of Broken Bow, 239 Neb. 437, 476 N.W.2d 822 (1991).
[8] Bergan Mercy Health Sys. v. Haven, 260 Neb. 846, 620 N.W.2d 339 (2000); In re Invol. Dissolution of Battle Creek State Bank, 254 Neb. 120, 575 N.W.2d 356 (1998).
[9] See, Bergan Mercy Health Sys., supra note 8; State v. Roth, 222 Neb. 119, 382 N.W.2d 348 (1986), disapproved on other grounds, State v. Wright, 261 Neb. 277, 622 N.W.2d 676 (2001).
[10] Loves v. World Ins. Co., 276 Neb. 936, 758 N.W.2d 640 (2008).
[11] Id.
[12] Id.
[13] Id. at 941, 758 N.W.2d at 644.
[14] Brief for appellant at 32.
[15] Bauers v. City of Lincoln, 255 Neb. 572, 586 N.W.2d 452 (1998).
[16] See, State ex rel. Stenberg v. Omaha Expo. & Racing, 263 Neb. 991, 644 N.W.2d 563 (2002); Bergan Mercy Health Sys., supra note 8.
[17] Soto, supra note 6.
[18] Brief for appellant at 34.
[19] Id. at 35.
[20] See, e.g., Bergan Mercy Health Sys., supra note 8.
[21] See Miller v. City of Omaha, 253 Neb. 798, 573 N.W.2d 121 (1998).
[22] Hug v. City of Omaha, 275 Neb. 820, 749 N.W.2d 884 (2008).
[23] See Kirchner v. Wilson, 262 Neb. 607, 634 N.W.2d 760 (2001).