17 Neb. App. 436
IN RE INTEREST OF SHAYLA H. ET AL., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
v.
DAVID H., APPELLANT.
No. A-08-947.
Court of Appeals of Nebraska.
Filed March 10, 2009.
Patrick T. Carraher, of Legal Aid of Nebraska, for appellant.
Jeremy P. Lavene, Deputy Lancaster County Attorney, and Richard Grabow, Senior Certified Law Student, for appellee.
CARLSON, MOORE, and CASSEL, Judges.
MOORE, Judge.

INTRODUCTION
David H. appeals from an order of the separate juvenile court of Lancaster County, adjudicating his minor children as juveniles under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) and placing the children outside the family home. For the reasons set forth herein, we reverse, and remand for further proceedings.

BACKGROUND
David is the father of three minor children, Shayla H., born August 21, 2001; Shania H., born August 1, 2003; and Tanya H., born September 26, 2004. Because the mother of the children is not involved in the present appeal, we have limited our recitation of the facts to only those applicable to David. Through David, the children are eligible for enrollment with the Rosebud Sioux Tribe (Tribe).
The State filed a petition in the juvenile court on February 15, 2008, alleging that the children were within the meaning of § 43-247(3)(a) in that they lacked proper parental care by reason of the faults or habits of David. The petition included the following allegations: (1) that since November 2007, David had failed to provide one or more of the children with proper medical care; (2) that on one or more occasion since January 2007, David had been involved in physical or verbal domestic confrontations with the children's mother occurring in the presence of or vicinity of one or more of the children; and (3) that on one or more occasion since November 2007, David had been under the influence of methamphetamine while being the primary caregiver of one or more of the children. The State alleged that because of these allegations, the children were at risk of physical or emotional harm. The petition does not contain any allegations under or references to the Nebraska Indian Child Welfare Act (ICWA), Neb. Rev. Stat. §§ 43-1501 to 43-1516 (Reissue 2008).
The State also filed a motion for ex parte temporary custody of the children. In the motion, the State alleged that the case fell within the provisions of § 43-247(3)(a) and that the children were in such conditions or surroundings that their welfare and best interests required that their custody be immediately assumed by the Department of Health and Human Services (Department) in order to place the children in the safest and least restrictive placement pending a hearing. In the accompanying affidavit, Holly Leonard, a protection and safety worker with the Department, set forth allegations of medical neglect, domestic violence, and substance abuse. Neither the motion nor the affidavit contains any information regarding the children's eligibility for enrollment with the Tribe or allegations under the ICWA. An ex parte order was entered, and the children were placed in foster care.
A hearing on the State's motion for temporary custody was held on February 20, 2008, and was continued for 1 week upon the parties' request. At the February 27 temporary custody hearing, the juvenile court heard testimony from Leonard, David, and the children's mother. The court received into evidence a copy of the State's motion for ex parte temporary custody, with Leonard's affidavit, and a copy of a letter from the Tribe indicating the children's eligibility for enrollment. Leonard testified that the Department was recommending that custody of the children be continued with the Department due to the lack of an appropriate safety monitor to reside in the family home to ensure the safety of the children. Leonard indicated that the Department was aware that David was enrolled with the Tribe. Leonard did not know whether the Tribe had been contacted about the pending juvenile case. Based on the evidence presented at the hearing, the court continued the children's temporary custody with the Department, but continued the hearing to allow for expert testimony relative to the provisions of the ICWA and to allow for notice to the Tribe.
On April 10, 2008, the matter came on for hearing for adjudication on the petition and further hearing on the out-of-home placement of the children under the applicable standards of the ICWA. The juvenile court informed David of the nature of the proceedings, the possible dispositions, and his rights pursuant to Neb. Rev. Stat. § 43-279.01 (Reissue 2008). David waived a formal reading of the petition and entered a denial to the allegations. During the placement portion of the hearing, Linda Dohmen, the children's caseworker as of March 6, testified. Dohmen has a bachelor's degree in human development and the family and, at the time of the hearing, had been employed by the Department for close to 11 years. In her job, Dohmen regularly assesses the safety and well-being of children, including the children in this case. To assist her in doing so, Dohmen has received training through the Department. Initially, when Dohmen began her employment, she received 17 weeks of training, and then each year, she receives "up to 24 hours of continuous training to fulfil [l] [her] duties with the Department." Dohmen testified that "[a]ssessing children" is one of the duties she continues to be trained on and that she recently received a 6-day training on "the new safety model" being used by the Department. Dohmen testified that the safety model is "a new way of identifying whether there [are] any safety risks." Dohmen was asked whether placing the children back with David would likely result in serious emotional or physical damage. David's attorney objected that Dohmen was not a qualified expert witness as required under the ICWA for such an opinion. The court overruled David's objection, and Dohmen testified that returning the children to David's care would result in serious emotional or physical damage to the children. The hearing was recessed due to a lack of time. The court continued the placement hearing, set the matter for a formal contested hearing, and ordered that its previous temporary orders remain in effect as modified following the April 10 hearing.
David filed a motion on April 11, 2008, seeking an order transferring the matter to the jurisdiction of the Tribe.
On May 2, 2008, the juvenile court considered and denied the motion to transfer jurisdiction to the Tribe. The court also heard a motion by the State for approval of placement change and received further evidence relative to the ICWA standards in connection with out-of-home placement of the children. Dohmen testified further in connection with that motion. Dohmen testified that in her 11 years with the Department, she has had the opportunity to work with families with Native American heritage. Dohmen also testified that the Department believed that there was a risk to the children of emotional or physical harm such that they could not yet be allowed to return to the family home. The hearing was recessed due to a lack of time.
The continued placement hearing and an adjudication hearing were held on May 29, 2008. David entered his voluntary appearance and waived service of summons of the amended petition on the record. In connection with the adjudication portion of the hearing, the court heard testimony from the children's grandmother, two police officers, Leonard and a former Department employee, and the children's mother. Following the conclusion of the mother's testimony, the hearing was recessed until July 2.
On July 2, 2008, the adjudication hearing resumed with testimony from David and Dohmen. In closing arguments in connection with the adjudication hearing, David's attorney argued that the ICWA requirements as to expert testimony applied both to temporary custody proceedings and to adjudication trials and that the case should be dismissed due to the State's failure to present ICWA expert testimony during the adjudication hearing. David's counsel also argued, based on this court's ruling in In re Interest of Dakota L. et al., 14 Neb. App. 559, 712 N.W.2d 583 (2006), that the petition should be dismissed because it did not include any ICWA allegations. Following the parties' closing arguments with respect to adjudication, the court received evidence on the placement issue. In connection with the placement portion of the July 2 hearing, Dohmen testified, over David's objection, that it was the Department's position that placing the children back with either parent was likely to result in substantial emotional or physical harm to the children.
The juvenile court entered an order on August 15, 2008, adjudicating the children as juveniles under § 43-247(3)(a). The court addressed David's argument that the amended petition should be dismissed on the ground that it failed to include allegations pleading the applicability of the ICWA. The court's analysis is as follows:
It is clear that the children . . . are "Indian children" for whom the provisions of [the ICWA] are applicable. [Certain exhibits] clearly show that the children are eligible for membership in the . . . Tribe, thus triggering the heightened evidentiary standards and substantive requirements for out of home placement of Indian children under Neb. Rev. Stat. Section 43-1505(4) and (5). The notice requirements of the [ICWA] are also applicable and were complied with in this case . . . .
The only authority the Court has been referred to in support of the position that there is a "pleading requirement" of ICWA applicability and standards, is In re Interest of Dakota [L. et al.], . . . in which the appellate court found that the [juvenile court] erred when it proceeded under a petition which lacked ICWA allegations. In that case, however, the State had filed two petitions, the latter of which did include specific ICWA allegations, and the Court proceeded to allow the petitioner to proceed under the earlier petition over the objection of the parent, who requested additional service and preparation time in which to defend against the subsequent petition. The appellate court did not cite any specific authority for the proposition that there are "pleading" requirements under [the] ICWA which make it improper to proceed on a petition that lacks them. Further, it is noteworthy in that case that the Juvenile Court in its subsequent adjudication order did not make specific factual findings as to the substantive requirements of [the] ICWA.
There is no language in [the ICWA] which requires a specific "pleading" to be included in a petition or proceeding brought in the interest of children who are covered by the provisions of the [ICWA]. There are specific evidentiary requirements needed to support a Court-ordered out of home placement and there are also elevated standards of proof for proceedings seeking to place children in foster care. . . . In this case it is clear that those evidentiary requirements and elevated standards of proof apply insofar as the State has requested and is continuing to request an out of home placement of these children.
Counsel for [David] at no time moved to dismiss the petition or complained of its alleged insufficiency in terms of pleading requirements under [the] ICWA, until all of the evidence by all parties had been presented. Despite clear knowledge that the provisions of [the] ICWA were applicable . . . in this case, the issue was never raised as
a defect in the petition that could easily have been corrected. Based upon counsel's clear opportunity to raise the issue of an alleged defect in the pleading at various opportunities prior to completion of the evidence, the lack of any specific statutory pleading requirement under the [ICWA], as well as the fact that the Court will clearly apply the evidentiary and burden of proof requirements under the [ICWA] to the evidence presented, the Court overrules the motion to dismiss the petition based solely upon the lack of ICWA allegations in the petition. The Court does note that the Amended Petition clearly alleges that the parents' actions or the situation place[s] the children at risk of physical or emotional harm, which closely parallels the language of [§ 43-]1505(5), requiring the State to prove by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent "is likely to result in serious emotional or physical damage to the child."
In its August 15, 2008 order, the juvenile court found that the State failed to prove the allegations of count I of the petition (medical neglect) as they related to David and dismissed that count for failure of proof. The court determined that the State proved the remaining counts of the petition (domestic violence and drug use) by clear and convincing evidence as they related to David.
The juvenile court also made findings on the issue of outof-home placement. The court found that Dohmen's testimony, particularly when considered with the evidence presented by the State at the formal hearing as to the violent relationship between the parents over a period of years and the use of methamphetamines by the parents as recently as 2008, was sufficient to satisfy the elevated standards under the ICWA to warrant an out-of-home placement of the children. The court observed that in In re Interest of Devin W. et al., 270 Neb. 640, 707 N.W.2d 758 (2005), the Nebraska Supreme Court noted that the adjudicatory phase of juvenile proceedings is to determine whether a child falls within the meaning of § 43-247(3)(a) and that the dispositional phase is to address the child's placement, including the parental preference for placement. The juvenile court found that, while the In re Interest of Devin W. et al. case did not involve Indian children, the placement standards under the ICWA would be further addressed at the dispositional phase of the present proceedings. The court determined that the State would be required to present further evidence, including the expert testimony required under the ICWA, as well as evidence of both reasonable and active efforts to reunify the family, if continued out-of-home placement outside either parent's home is requested at that time. The court determined, based on the evidence currently before it, including the testimony of Dohmen and Leonard, as well as testimony presented during the formal adjudication hearing, that reasonable and active efforts were made by the State to prevent the children's removal from the parental home and that to return them to either parent's care, at that time, would likely result in serious emotional or physical harm to the children.

ASSIGNMENTS OF ERROR
David asserts that the juvenile court erred in (1) not following decisions from this court regarding pleadings under the ICWA, (2) entering an order of adjudication when the State failed to present expert testimony regarding standards set forth in the ICWA, (3) adjudicating the children as juveniles under § 43-247(3)(a), and (4) removing the children from the family home and placing them in foster care without expert testimony as required under the ICWA.
David also argues, but does not assign as error, that the juvenile court erred in finding that a certain district court order was not relevant evidence in the present case. Errors argued but not assigned will not be considered on appeal. Vokal v. Nebraska Acct. & Disclosure Comm., 276 Neb. 988, 759 N.W.2d 75 (2009).

STANDARD OF REVIEW
[1] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. In re Interest of Taylor W., 276 Neb. 679, 757 N.W.2d 1 (2008); In re Interest of Jagger L., 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. In re Interest of Jagger L., supra.

ANALYSIS

Pleadings.
David asserts that the juvenile court erred in not following decisions from this court regarding pleadings under the ICWA. We treat this argument as one assigning error to the juvenile court's failure to sustain David's motion to dismiss the petition.
One of the reasons the juvenile court gave for overruling David's motion to dismiss the petition due to the lack of ICWA allegations was his counsel's failure to raise the issue earlier in the proceedings. David's motion was made during the course of closing arguments in connection with the adjudication hearing. David's motion was purportedly a motion for failure to state a cause of action under Neb. Ct. R. Pldg. § 6-1112(b)(6), and we observe that § 6-1112(b) allows for such a defense to be made at trial. See, also, § 6-1112(h)(2) (waiver or preservation of certain defenses). Thus, to the extent that the court's denial was based upon the motion's untimeliness, this was error.
David argues that the petition and motions for temporary custody should have alleged facts with regard to § 43-1505, which sets forth guidelines for state courts to follow in involuntary proceedings when the court knows or has reason to know that an Indian child is involved. The following subsections of § 43-1505 are relevant to our analysis:
(4) Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
(5) No foster care placement may be ordered in [an involuntary] proceeding [in a state court] in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
(6) No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
This court previously addressed ICWA pleading requirements in the context of a termination of parental rights proceeding in In re Interest of Sabrienia B., 9 Neb. App. 888, 621 N.W.2d 836 (2001). In In re Interest of Sabrienia B., the State failed to include ICWA language in its motion for termination, although the parties had stipulated that the child was Indian and that the ICWA would be applicable to any termination proceedings. The State's motion for termination included language under the general termination statute, see Neb. Rev. Stat. § 43-292 (Reissue 2008), but it failed to include any specific ICWA language under § 43-1505(4) and (6). The mother in that case demurred to the motion for termination, claiming that because the State's motion did not include any ICWA language, the allegations in the motion did not "'articulate an essential element to sustain a finding and Order of termination.'" 9 Neb. App. at 890, 621 N.W.2d at 839. The juvenile court denied the demurrer and terminated the mother's parental rights. The juvenile court concluded that the State had proved the requirements of § 43-1505(4) and (6), even though no ICWA language appeared in the motion. The mother appealed, alleging, among other things, that the juvenile court erred in finding that the State's motion stated a cause of action.
[2] On appeal, this court held that the ICWA's requirement of "active efforts" is separate and distinct from the "reasonable efforts" provision of § 43-292(6) and therefore requires the State to plead active efforts by the State to prevent the breakup of the family. In re Interest of Sabrienia B., supra. This court determined that the State's motion failed to state a cause of action for termination of parental rights under the ICWA. We found the State's failure to include the relevant ICWA language in its motion was not remedied by the facts that the applicability of the ICWA had been discussed in court and that the juvenile court specifically found that the State had proved the relevant ICWA requirements. This court reversed the order of termination, granting the State leave to amend its motion on remand.
This court applied the rationale of In re Interest of Sabrienia B. to an adjudication proceeding in In re Interest of Dakota L. et al., 14 Neb. App. 559, 712 N.W.2d 583 (2006). In that case, the State filed a petition alleging that the children were within the meaning of § 43-247(3)(a) and also filed a motion for temporary custody, requesting that temporary custody of the children be placed with the Department. Neither the original petition nor the motion for temporary custody included any allegations under the ICWA. The juvenile court ordered that temporary custody be given to the Department, with placement to exclude the mother's home. At a first appearance and detention/protective custody hearing, the court was informed that the ICWA was applicable and that the children were enrolled in an Indian tribe. The court informed the mother of her rights, including the enhanced evidentiary standard of the ICWA. An ICWA notice was then sent to the applicable tribe. Subsequently, the State filed an amended petition with the court, which petition included ICWA language in its allegations. Then, for reasons not important to our analysis, at the adjudication hearing, the court proceeded with the adjudication hearing on the original, rather than the amended, petition. The juvenile court adjudicated the children under § 43-247(3)(a), made a finding in the adjudication order that the ICWA applied to the proceedings, and found that certain allegations of the petition were true by clear and convincing evidence. The court made no specific findings under the ICWA.
On appeal to this court, the mother alleged, among other things, that the State's petition failed to meet the pleading requirements of the ICWA, infringing her due process rights. This court applied the rationale of In re Interest of Sabrienia B., 9 Neb. App. 888, 621 N.W.2d 836 (2001), and concluded that in an action for adjudication of Indian children, it is necessary to plead facts under the ICWA. In re Interest of Dakota L. et al., supra. This court observed that although the State filed an amended petition including allegations under the ICWA, the court did not adjudicate the children on that petition. We determined that it was error for the court to proceed under the original petition, which did not allege facts under the ICWA, despite the fact that the mother had been served with the amended petition and had been notified in court of the ICWA's applicability. We also concluded that the court erred in proceeding on the original petition, which had been superseded by the amended petition. Accordingly, we reversed the order of adjudication and remanded the cause for an adjudication under an appropriate amended petition, with directions to the court to make specific findings as required by § 43-1505.
In the present case, neither the petition nor the motion for temporary custody included any allegations under the ICWA. In the petition, the State asked the court to make such orders concerning the care, custody, and control of the children as it deemed proper, including liability for child support if the children were placed outside the parental home. The motion for temporary custody urged that the children's custody be immediately assumed by the court in order to place the children in the safest and least restrictive placement pending a hearing. Clearly, placement outside the family home was contemplated by both the petition and the motion. We observe that the juvenile court in this case did make ICWA findings in its August 15, 2008, order, unlike the court in In re Interest of Dakota L. et al., 14 Neb. App. 559, 712 N.W.2d 583 (2006). Nonetheless, we conclude that allegations under the ICWA were required in the petition and motion for temporary custody. Therefore, we find that the juvenile court erred in failing to sustain David's motion to dismiss made at the adjudication hearing. The defects in the State's petition and motion appear capable of being cured by amendment. We note that the record does not show that the State ever sought to amend the petition and/or motion. But see Alston v. Parker, 363 F.3d 229 (3d Cir. 2004) (noting that complaints vulnerable to Fed. R. Civ. P. 12(b)(6) dismissal should not be dismissed without allowing amendment even when plaintiff does not seek leave to amend). As such, we reverse, and remand for further proceedings consistent with this opinion.

Expert Testimony.
David asserts that the juvenile court erred in removing the children from the family home and placing them in foster care without expert testimony as required under the ICWA. Because issues regarding the expert testimony required under the ICWA are likely to recur upon remand, we have reviewed this assignment of error. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. Gavin v. Rogers Tech. Servs., 276 Neb. 437, 755 N.W.2d 47 (2008).
Pursuant to the ICWA, qualified expert testimony is required on the issue of whether serious emotional harm or physical damage to the Indian child is likely to occur if the child is not removed from the home before foster care placement may be ordered. See § 43-1505(5). A similar requirement is imposed by § 43-1505(6) in the context of termination of parental rights proceedings. This evidence must be established by qualified expert testimony provided by a professional person having substantial education and experience in the area of his or her specialty. See In re Interest of C.W. et al., 239 Neb. 817, 479 N.W.2d 105 (1992).
The Nebraska Supreme Court has previously addressed the qualifications of experts to give testimony under § 43-1505. In In re Interest of C.W. et al., 239 Neb. at 824, 479 N.W.2d at 111, the court noted the following guidelines set forth by the Bureau of Indian Affairs under which expert witnesses will most likely meet the requirements of the ICWA:
"(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.
"(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards in childrearing practices within the Indian child's tribe.
"(iii) A professional person having substantial education and experience in the area of his or her specialty."
In that case, the court reviewed case law from other jurisdictions finding that a witness' background in Indian culture does not necessarily determine that witness' qualifications as an expert under the ICWA. The court found no error in the admission of the expert's opinion in that particular case, where he possessed substantial education and experience in his area of specialty, which was clinical psychology, and the court determined that his lack of experience with the Indian way of life did not compromise or undermine the value of his testimony. See, also, In re Interest of Phoebe S. & Rebekah S., 11 Neb. App. 919, 664 N.W.2d 470 (2003) (social work professor qualified to testify as expert witness under ICWA, where professor had substantial education and experience in area of child welfare, bonding, and attachment and in sociological aspects of childhood, and was experienced and knowledgeable about ICWA); C.E.H. v. L.M.W., 837 S.W.2d 947 (Mo. App. 1992) (stating that phrase "qualified expert witness" is not defined by federal ICWA, but legislative history of federal ICWA reveals that phrase is meant to apply to expertise beyond normal social worker's qualifications), citing Matter of Adoption of T.R.M., 525 N.E.2d 298 (Ind. 1988).
In the present case, the only witness to provide testimony that returning the children to David's care was likely to result in serious emotional or physical damage to the children was Dohmen. Dohmen has a bachelor's degree in human development, had been employed by the Department for close to 11 years, and regularly assesses the safety and well-being of children in the course of her employment. To assist her in her duties, Dohmen receives regular training through the Department. Dohmen testified that in her 11 years with the Department, she has had the opportunity to work with families with Native American heritage. While we decline to address the question of whether a Department caseworker can ever qualify as an expert witness under § 43-1505, we conclude in this case that this particular record did not establish that Dohmen was sufficiently qualified to testify as an expert witness under the requirements of the ICWA. The evidence does not support a conclusion that Dohmen had either substantial experience in the delivery of child and family services to Indians or extensive knowledge of social and cultural standards in childrearing practices within the Tribe. Nor does the evidence support a conclusion that Dohmen was a professional person with substantial education and experience in the area of her specialty. Accordingly, the juvenile court erred in relying on her for the required expert testimony to justify continued out-of-home placement under the ICWA.
David also asserts that the juvenile court erred in entering an order of adjudication when the State failed to present expert testimony regarding standards set forth in the ICWA, noting that no such expert testimony was presented during the adjudication portion of any of the hearings in this case. In addressing David's assertion, we simply observe that while the plain language of § 43-1505 requires expert testimony for foster care placement of an Indian child, the plain language of § 43-247(3)(a) does not require expert testimony to establish that a child is a juvenile as described in that section.
Because of our resolution of the above assignments of error, we need not address David's assertion that the juvenile court erred in adjudicating the children as juveniles under § 43-247(3)(a).

CONCLUSION
The juvenile court erred in failing to sustain David's motion to dismiss made at the adjudication hearing. Accordingly, we reverse the decision of the juvenile court and remand the cause for further proceedings as indicated above.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.