IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

IN RE INTEREST OF ABBIE L. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ABBIE L. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

ANTHONY S., APPELLANT.

Filed April, 26, 2016.    No. A-15-996.

Appeal from the Separate Juvenile Court of Douglas County: ELIZABETH CRNKOVICH, Judge. Reversed and vacated.

Jeffrey A. Wagner and Liam K. Meehan, of Schirber & Wagner, L.L.P., for appellant.

Donald W. Kleine, Douglas County Attorney, and Eric Fabian for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

Anthony S. appeals from the order of the Separate Juvenile Court of Douglas County, granting the continued temporary custody of his child, Eveahla S., to the Nebraska Department of Health and Human Services (DHHS). Anthony argues that the juvenile court did not comply with the requirements of the Nebraska Indian Child Welfare Act (NICWA), Neb. Rev. Stat. § 43-1501 to 43-1517 (Reissue 2008 & Supp. 2015). Anthony and the State agree reversal is warranted; they disagree on how that would affect the temporary custody of Eveahla. We reverse and vacate the juvenile court's order.

- 1 -

BACKGROUND

Anthony is the biological father of Eveahla, born in September 2015. Omrianna F. is Eveahla's biological mother. Because Omrianna is not a part of this appeal, she will only be discussed as necessary. We note that Omrianna has six other children, but Anthony is not their father; those six children are not part of this appeal and will not be discussed further.

On September 18, 2015, the State filed a petition alleging that Eveahla was a child as defined by Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015) due to the faults or habits of Omrianna and Anthony; the petition made no mention of NICWA or its applicability. On that same date, the State also filed for, and was granted, immediate custody of Eveahla; the affidavit in support of the State's ex parte motion stated "ICWA does apply - Crow Indian tribe."

On October 6, 2015, the State filed a notice of change of placement for Eveahla, wherein the State notified the court that Eveahla had been moved to a relative's home (mother's side) and indicated that "[t]his is a relative placement that is also a member of the same Native American Tribe."

On October 8, 2015, the State filed an amended petition alleging that Eveahla was a child as defined by § 43-247(3)(a) due to the faults or habits of Omrianna and Anthony. The amended petition included allegations pertinent to NICWA. The State specifically alleged that Eveahla was "enrolled and/or eligible for enrollment in Winnebago Tribe of Nebraska or Crow Nation." The State also alleged that pursuant to § 43-1505(4) active efforts had been made to provide remedial services and rehabilitative programs designed to prevent the break-up of the family, but that such efforts had been unsuccessful; and pursuant to § 43-1505(5), the continued custody of Eveahla by her parents was likely to result in serious emotional or physical damage to the child.

The first appearance and protective custody hearing was held on October 13, 2015. Anthony appeared at the hearing and was represented by counsel. The hearing was continued as to Omrianna so that the State could perfect service on her. The State also sought a continuance because its "ICWA specialist" had a family emergency and was unable to appear at the hearing. The following discussion was then had on the record.

[ANTHONY'S COUNSEL]: Your Honor, we would oppose a continuance at this time. My client is present. He is asking that custody of his child be returned to him, and we are prepared to proceed. The State has known this was an ICWA case since filing. I don't -- I'm not even aware of them issuing a subpoena for anybody, so --

THE COURT: Okay, Your client is seeking custody or merely placement?

[ANTHONY'S COUNSEL]: Well, he would ask that he would have custody of his child at this time and that the Department be relieved of responsibility.

THE COURT: All right. Thank you. Your objection is overruled. We will proceed today.

[THE STATE]: Yes, Your Honor.

THE COURT: There is no evidence on the record that ICWA is applicable. Is there, [State's counsel]?

[THE STATE]: No, Your Honor.

[ANTHONY'S COUNSEL]: Your Honor, if I may?

THE COURT: Uh-huh

[ANTHONY'S COUNSEL]: In the affidavit for removal filed by the State in this matter it states that the children are enrolled members.

THE COURT: Okay. I was -- well, not exactly. It says Crow Indian Tribe - ICWA does apply. I do not see where it says they are enrolled members.

. . .

[ANTHONY'S COUNSEL]: And then I think there may be another affidavit.

. . .

THE COURT: At any rate, here is the issue. Certain evidence at this initial protective custody hearing has to be presented, period, so -- and it has to rise to a certain level. And this is an initial protective custody hearing.

. . .

[ANTHONY'S COUNSEL]: Your Honor, just for a point of clarification --

THE COURT: Yes.

[ANTHONY'S COUNSEL]: -- the State has filed an amended petition in this matter.

THE COURT: Correct.

[ANTHONY'S COUNSEL]: And, in fact, the amended petition, just for clarification, alleges tribal enrollment.

THE COURT: Yes. I understand that. But we are not here for adjudication.

[ANTHONY'S COUNSEL]: I understand.

THE COURT: Okay.

[ANTHONY'S COUNSEL]: But for the purposes of detention --

THE COURT: Got it.

[ANTHONY'S COUNSEL]: --the court and the parties are on notice that ICWA applies.

THE COURT: Got it.

[ANTHONY'S COUNSEL]: Okay.

THE COURT: I think I am operating under the bump-up under the ICWA.

[ANTHONY'S COUNSEL]: Okay.

THE COURT: I am not addressing anything further. You may call your first witness.

At that point the State called its only witness, Stacy Merrell, to testify.

Merrell, an initial assessment worker with the State of Nebraska, testified as follows. She went to the hospital the day after Eveahla's birth. Omrianna admitted she used marijuana at the onset of labor, used "meth" approximately 3 days prior to delivery, and had limited prenatal care. Omrianna tested positive for amphetamines and THC, and Eveahla had meth in her system. Omrianna and Anthony said they fought a lot; in fact, Omrianna had been in the emergency room the weekend before giving birth due to a domestic situation that caused bruising on her ribs. Anthony said he and Omrianna frequently fought over her drug use. Anthony did not have a place to live because his mother had recently passed away and his grandmother had changed the locks

to the home; but he did not say how long the locks had been changed or how long he had been homeless.

Merrell was aware that Eveahla was eligible for tribal enrollment. Prior to removal, Merrell's efforts consisted of doing an investigation, meeting with Eveahla's parents, and gathering documents from hospital staff. She also contacted Eveahla's grandparents, who had two of Eveahla's sisters, but they were not able to take Eveahla. On cross-examination, Merrell acknowledged that her efforts prior to removal did not go beyond reasonable efforts. In response to a question by the court, Merrell stated that efforts would not have prevented removal.

Merrell testified that it would not be safe for Eveahla to return to Anthony because he did not have a place to live, did not have a job, and because of the domestic violence issues. However, she testified that she did not believe that Eveahla would likely be seriously harmed if placed with Anthony.

Following Merrell's testimony, the State renewed its motion to continue, but the motion was denied. Both sides rested and the State submitted on the evidence. Anthony's counsel then addressed the court as follows.

[ANTHONY'S COUNSEL]: Just briefly, Judge. Before this Court can order foster care placement, it must be supported by clear and convincing evidence, including testimony of a qualified expert witness that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. We have no such testimony. We have no such expert. We have no such evidence. I would ask the Court to release the child to my client.

The court then addressed the parties as follows.

THE COURT: All right. I -- the law is -- first of all, this is an initial protective custody hearing. There is information that this child is an Indian child under the Indian Child Welfare Act. There is not evidence before the record [sic] that either parent is an enrolled member of a tribe, nor is there evidence that the children -- this child is an enrolled member and/or is eligible for enrollment, number one. There are certain conditions that are required by the Department and anyone else, knowing that -- just on a preliminary concern that the child might be Native American. There is testimony that the Tribe has been notified.

There is testimony that efforts, period, whether active or reasonable, would not have prevented the removal of this child, and I find that to be the case. I believe the testimony, taken as a whole, provides sufficient evidence under the Indian Child Welfare Act that at this time it would be quite challenging to place this child with her father and that it could result in serious emotional and physical distress.

Now, even though the witness said no to physical, I have no idea where this individual lives. I have no idea what his circumstances are. I have no idea what preparations he may have made for the care of this very young infant. I have information that suggests he remains in a relationship with the child's mother. So at this time the child will remain [in] the custody of [DHHS] for appropriate care and placement to exclude the home of the father. . . .

In an order filed on October 15, 2015, the juvenile court found that active efforts had been made to prevent or eliminate the need for removal; such efforts included, but were not limited to, a risk assessment, placement, and case management. The court further found that continued custody of Eveahla by the parent or Indian custodian was likely to result in serious emotional or physical damage. The court ordered that Eveahla should remain in the temporary custody of DHHS for appropriate care, education, and maintenance outside of Anthony's home. Anthony was allowed reasonable rights of supervised visitation. He has timely appealed the juvenile court's order.

## ASSIGNMENTS OF ERROR

Anthony assigns that the trial court erred in: (1) failing to find that NICWA applied; (2) "finding that the child could be detained under an [sic] NICWA standard when the testimony from the State's only witness, who was not a qualified expert, conceded both that active efforts had not occurred and that the child was not at a risk of imminent physical or emotional harm"; (3) detaining the child when there was not clear and convincing evidence the child would suffer serious emotional or physical damage if returned to him; (4) finding that the child was at risk of harm, even absent NICWA standards; and (5) finding that active or reasonable efforts would not have prevented the removal of the child.

The State attempted to cross-appeal the juvenile court's denial of its motion to continue so that it could call a NICWA expert to testify. However, the cross-appeal is not noted on the cover of the State's brief. Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2008) states that the cross-appeal shall be noted on the cover of the brief and shall be set forth in a separate division of the brief, headed "Brief on Cross-Appeal." Appellate courts of this state have repeatedly held that a cross-appeal must be properly designated under § 2-109(D)(4) if affirmative relief is to be obtained. See *Bacon v. DBI/SALA*, 284 Neb. 579 822 N.W.2d 14 (2012). See, also, *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999) (appellate courts of this state have always refused to consider a prayer for affirmative relief where such a claim is raised in a brief designated as that of an appellee; appellate courts have, in the past, decided to entertain a procedurally defective cross-appeal only where such cross-appeal has been mistakenly asserted as an appellant's brief and even this is a matter left solely to the discretion of the courts). Therefore, we do not consider the merits of the State's purported cross-appeal.

## STANDARD OF REVIEW

Statutory interpretation is a question of law that an appellate court resolves independently of the trial court. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016).

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *Id.*

## ANALYSIS

*Applicability of NICWA/ICWA.*

Generally speaking, the substantive portions of the federal Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 et seq. (2012), and NICWA provide heightened protection to the rights

of Indian parents, tribes, and children in proceedings involving custody, termination, and adoption. *In re Interest of Jassenia H.*, 291 Neb. 107, 864 N.W.2d 242 (2015).

Anthony asserts that the juvenile court erred in failing to find that NICWA applied because, contrary to the juvenile court's finding, there was evidence that Eveahla was an Indian child under the act. The State agrees with Anthony on this point.

Although the parties agree that the juvenile court erred in failing to find that NICWA applied, the juvenile court never specifically said that NICWA did not apply or that NICWA did apply. At the beginning of the hearing, the juvenile court had a discussion with Anthony's counsel regarding the applicability of NICWA, wherein the juvenile court said: "I think I am operating under the bump-up under the ICWA." However, at the conclusion of the hearing, the juvenile court "made the curious finding that there was no evidence that the minor child was eligible for enrollment or enrolled in a tribe." Brief for appellant at 8. Anthony notes that the State's only witness testified that the child was eligible for enrollment, and that the State's pleadings alleged the child was enrolled or eligible for enrollment in an Indian tribe. In its order, the court did find that active efforts had been made to prevent or eliminate the need for removal, and that continued custody of the child by the parent or Indian custodian was likely to result in serious emotional or physical damage to the child--both of these findings are pertinent to NICWA.

To clear up any confusion created by the juvenile court's ruling, upon our de novo review, we specifically find that NICWA applies to this case. As we will explain, NICWA is applicable because there was reason to believe that Eveahla was an Indian child; specific evidence proving her Indian status was not required. We base our finding on the guidelines published by the federal Bureau of Indian Affairs (BIA guidelines).

BIA guidelines provide guidance to state courts and child welfare agencies implementing ICWA and promote compliance with ICWA's stated goals by providing a framework and best practices for compliance. See *In re Interest of Tavian B.*, 292 Neb. 804, 874 N.W.2d 456 (2016). The BIA guidelines were originally published in 1979, see Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584 (Nov. 26, 1979) (not codified), but were recently updated in 2015, see Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146 (February 25, 2015) (not codified) (superseding and replacing 1979 guidelines). Because Eveahla was not born until September 2015, the updated BIA guidelines are applicable.

The BIA guidelines now provide that "[i]f there is any reason to believe the child is an Indian child, the agency and State court must treat the child as an Indian child, unless and until it is determined that the child is not a member or is not eligible for membership in an Indian tribe." 80 Fed. Reg. at 10,152, A.3(d).

An "Indian child" is defined as "any unmarried person who is under eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." § 43-1503(8). On the record before us, there was clearly reason to believe Eveahla was an Indian child, and she therefore must be treated as such. Accordingly, NICWA/ICWA is applicable to the present case.

*Continued Detention.*

Anthony asserts that the juvenile court erred in "finding that the child could be detained under an [sic] NICWA standard when the testimony from the State's only witness, who was not a qualified expert, conceded both that active efforts had not occurred and that the child was not at a risk of imminent physical or emotional harm." Brief for appellant at 10. Once again, the State is in agreement with Anthony.

The State's ex parte motion for temporary custody sought an order placing Eveahla in the custody of DHHS for placement in foster care or other appropriate placement, with placement to exclude the home of Omrianna and Anthony. Such an order would constitute a "foster care placement" under NICWA, which is described as "any action removing an Indian child from his or her parent . . . for temporary or emergency placement in a foster home or institution or the home of a guardian or conservator where the parent . . . cannot have the child returned upon demand, but where parental rights have not been terminated[.]" § 43-1503(3)(a).

Under NICWA, before an Indian child can be placed in foster care, certain requirements must be met. Pursuant to § 43-1505(4):

> Any party seeking to effect a foster care placement of . . . an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family or unite the parent or Indian custodian with the Indian child and that these efforts have proved unsuccessful. . . . Prior to the court ordering placement of the child in foster care . . ., the court shall make a determination that active efforts have been provided or that the party seeking placement or termination has demonstrated that attempts were made to provide active efforts to the extent possible under the circumstances.

"Active efforts" requires more than the "reasonable efforts" standard applicable in non-ICWA cases, and at least some efforts should be culturally relevant. *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008); *In re Interest of Ramon N.*, 18 Neb. App. 574, 789 N.W.2d 272 (2010). There is no precise formula for "active efforts"; instead, the standard requires a case-by-case analysis. *In re Interest of Walter W., supra.*

In the instant case, Merrell's efforts prior to removal consisted of doing an investigation, meeting with Eveahla's parents, and gathering documents from hospital staff. She also contacted Eveahla's grandparents, who had two of Eveahla's sisters, but they were not able to take Eveahla. Merrell acknowledged that her efforts prior to removal did not go beyond reasonable efforts. The juvenile court found that active efforts had been made to prevent or eliminate the need for removal. The court noted that such efforts included, but were not limited to, a risk assessment, placement, and case management. We are inclined to agree with Anthony and the State that the evidence in the record does not rise to the level of active efforts. But even if active efforts were provided, there was still a deficiency under § 43-1505(5).

Section 43-1505(5) requires qualified expert testimony on the issue of whether serious emotional harm or physical damage to the Indian child is likely to occur if the child is not removed from the home before foster care placement may be ordered. See *In re Interest of Shayla H. et al.*,

17 Neb. App. 436, 764 N.W.2d 119 (2009). Although the juvenile court in the instant case found that continued custody of the child by the parent was likely to result in serious emotional or physical damage to the child, there was no qualified expert testimony as required by § 43-1505(5) to support this finding. Pursuant to § 43-1503(15):

> Qualified expert witness shall mean one of the following persons, in descending priority order although a court may assess the credibility of individual witnesses:
>
> (a) A member of the Indian child's tribe or tribes who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family and childrearing practices;
>
> (b) A member of another tribe who is recognized to be a qualified expert witness by the Indian child's tribe or tribes based on his or her knowledge of the delivery of child and family services to Indians and the Indian child's tribe or tribes;
>
> (c) A lay expert witness that possesses substantial experience in the delivery of child and family services to Indians and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe or tribes;
>
> (d) A professional person having substantial education and experience in the area of his or her specialty who can demonstrate knowledge of the prevailing social and cultural standards and childrearing practices within the Indian child's tribe or tribes; or
>
> (e) Any other professional person having substantial education in the area of his or her specialty[.]

And the BIA guidelines state that a qualified expert witness should have specific knowledge of the Indian tribe's culture and customs. 80 Fed. Reg. at 10,157, D.4.

There is no evidence in the record that Merrell is a member of any Indian tribe, or has any knowledge of the Indian tribe's culture and customs. Nor is there any evidence that she is a professional person with substantial education in the area of her specialty; she testified that she has a bachelor's degree in human services management and has been an initial assessment worker for "over a year." Accordingly, Merrell was not a qualified expert for purposes of NICWA.

Because the evidence at the October 13, 2015, protective custody hearing did not include testimony of a qualified expert, we agree with Anthony and the State that the juvenile court erred in continuing Eveahla's out-of-home placement. We reverse the juvenile court's order on this issue.

The State requests that we remand the case to enable it to provide expert testimony on the issues of serious emotional or physical damage to the minor child, and active efforts. However, we find that the juvenile court's order of continued custody should be reversed and vacated. *In re Interest of Borius H. et al.*, 251 Neb. 397, 558 N.W.2d 31 (1997), is instructive on this point.

In *In re Interest of Borius H. et al., supra*, a non-NICWA case, the State filed a petition in juvenile court alleging that the children were juveniles within the meaning of § 43-247(3)(a) due to the faults or habits of their mother. On that same date, the State filed a motion for temporary custody, without an accompanying affidavit. On an ex parte basis, the juvenile court sustained the motion and issued an order for immediate custody placing the children in the custody of the Department of Social Services (Department). At a detention hearing, the court, without receiving

any evidence or hearing any testimony, ordered that the Department should retain custody of the children. On appeal, this court reversed the order and directed the children be returned to the mother unless, within 8 days of our mandate, the State established facts at a hearing which justified preadjudication removal of the children from the mother's home. On the mother's petition for further review, the Nebraska Supreme Court determined our remand order was incorrect and that the cause should be remanded with orders to dismiss and to return the children to their mother.

The Nebraska Supreme Court found that the State did not sufficiently prove the statutory requirements for continuing to withhold a juvenile from his or her parent pending adjudication, and that the juvenile court erred in granting the detention order, thereby continuing the temporary custody of the children with Department. The Supreme Court noted this court reached the same conclusion, but took issue with this court's decision to allow the Department to retain temporary custody for a period of up to 8 days or until the State established evidence warranting continued detention. The Supreme Court said:

> In the instant case, the State failed to provide any evidence warranting continued custody. As such, the juvenile court lacked the authority to order continued temporary custody. See [Neb. Rev. Stat.] § 43-254 [(Reissue 1993)]. Moreover, the June 14 ex parte temporary custody order also provides no authority for continued detention because it was superseded by the June 27 order. Considering that the juvenile court lacked authority to order continued detention of the children, it is axiomatic that the Court of Appeals also lacked the authority to order continued custody of the children with [the Department] for up to 8 days so that the State could follow the law and prove its contentions with actual evidence.

*In re Interest of Borius H. et al.*, 251 Neb. at 403, 558 N.W.2d at 35. The Supreme Court held that the juvenile court's order continuing detention of the children with the Department should be reversed, and that the State's failure to provide any proof substantiating its motion required the cause "to be remanded with orders to dismiss and to return the children to their mother." *Id.*

In the instant case, there was a failure of proof in that the protective custody hearing did not include the requisite testimony of a qualified expert. See § 43-1505(5). Without such testimony, the juvenile court could not order foster care placement for Eveahla. Accordingly, we reverse and vacate the juvenile court's order awarding the continued temporary custody of Eveahla to DHHS. We note that the State is not foreclosed from taking measures to protect Eveahla pending adjudication, since it may refile for temporary custody whenever there is a factual basis for doing so. See *In re Interest of Anthony G.*, 255 Neb. 442, 586 N.W.2d 427 (1998).

Given our disposition of this appeal, we need not address Anthony's remaining assignments of error. See *Doty v. West Gate Bank*, 292 Neb. 787, 874 N.W.2d 839 (2016) (appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it).

## CONCLUSION

For the reasons stated above, we reverse and vacate the juvenile court's order awarding the continued temporary custody of Eveahla to DHHS.

REVERSED AND VACATED.