IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF MICHAEL C.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF MICHAEL C., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL C., APPELLANT.

Filed January 29, 2019.   No. A-18-034.

Appeal from the County Court for Scotts Bluff County: KRIS D. MICKEY, Judge. Affirmed.

Bernard J. Straetker, Scotts Bluff County Public Defender, for appellant.

No appearance for appellee.

PIRTLE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

Michael T. C. (Michael Sr.), biological father of Michael C. C. (Michael Jr.), appeals from an order of the Scotts Bluff County Court, sitting in its capacity as a juvenile court, terminating his parental rights. He contends that the court erred in finding that one or more of the conditions set forth in Neb. Rev. Stat. § 43-292(1), (2), and (6) (Reissue 2016) exist and finding that termination was in the child's best interests. Michael Sr. further contends that the State failed to prove, beyond a reasonable doubt, through qualified expert witness testimony, that the continued custody of Michael Jr. by Michael Sr. was likely to result in serious emotional or physical damage to Michael Jr., as required by Nebraska's Indian Child Welfare Act (NICWA). For the reasons set forth herein, we affirm the order of termination.

- 1 -

STATEMENT OF FACTS

On September 23, 2016, the State filed a juvenile court petition alleging that Michael Sr. and Michael Jr.'s mother, Katie D., had neglected him and asked that he be adjudicated as a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). Specifically, the petition alleged that the parents' use of controlled substances, domestic violence, and lack of stable housing placed Michael Jr. at risk of harm. The same day, the State filed a motion to grant the Department of Health and Human Services (DHHS) temporary custody of Michael Jr. The court ordered that he be removed from his parents' custody for placement outside the home.

A guardian ad litem (GAL) was appointed on behalf of Michael Jr., and, in his first report to the court, the GAL alleged that Michael Sr. abused Katie by stabbing, punching, choking, breaking her ribs, and puncturing her lung. He alleged that Katie initially agreed to assist with the prosecution of Michael Sr. for felony domestic violence charges, but later recanted her accusations. The GAL also alleged that Michael Sr. was emotionally abusive to Katie. For example, the GAL alleged "it is reported that if Michael Sr. does not like what Katie has made for dinner he will throw it on the ground, make her get on all fours and eat the food."

The GAL also alleged that Michael Sr. screamed and yelled at Michael Jr. and that "[h]e yelled at Katie 'I see how [Michael Jr.] fucking looks at you' indicating that he was jealous of the attention Katie gave to the newborn child." He also reported that Michael Jr. tested positive for exposure to methamphetamine.

During the pendency of the case, Katie obtained a protection order against Michael Sr. On November 20, 2016, in violation of the protection order, Michael Sr. broke into her empty apartment. Police responded, found the doors locked, and called Katie. She claimed she was too afraid to come to the apartment to open the door, but gave permission for officers to enter and search. Police found Michael Sr. inside the apartment and arrested him. As part of a plea agreement, Michael Sr. pled guilty to trespassing and violation of a protection order, both misdemeanors, in order to avoid felony convictions, and was incarcerated from November 2016 to January 2017 on these convictions. As part of the plea agreement, he agreed not to contest the allegations contained in the September 23, 2016, juvenile court petition and admitted to the allegations on the record. The State utilized the aforementioned GAL report and Michael Sr.'s admissions as its factual basis to support the allegations contained in the juvenile petition.

On January 17, 2017, the court held a dispositional hearing. Michael Sr. was not present at the hearing due to his incarceration. The court ordered Michael Sr. to undergo a substance abuse evaluation, which he completed on January 20 while incarcerated. During the evaluation, he admitted that he occasionally drank alcohol and had used drugs on two occasions several years before. He also told the interviewer that he had stepped away from his parenting visits because Katie was "preferred by the courts" over him.

On May 16, 2017, the court held another review hearing. Michael Sr. testified at this hearing:

> I have just been working. That's why I haven't been able to make it to the visits. So I haven't been able to make it to the visits. So I don't have a drug problem. You know, I mean, I have just been trying to just stack -- stack cash because they say that I need my own place. I need all -- my own car and everything. That's what I've been doing.

During a recess from court proceedings, he tested positive for methamphetamines. The court pointed out the apparent misrepresentation, and Michael Sr. interrupted, stating "I never said that." A short time later, Michael Sr. interrupted the county attorney, adding "I don't have a drug problem, but I tested positive. So what?" The court asked him to be quiet, but he again interrupted the county attorney. The court then ordered that he be removed from the courtroom.

At that hearing, Michael Sr.'s January 2017, substance abuse evaluation report was received into evidence. In the report, he admitted to two instances of drug use earlier in his life. The report also included two pages of criminal history which demonstrated that he had a felony conviction as a minor and, as an adult, he had been convicted of at least nine misdemeanors, including multiple Class I misdemeanors.

In June 2017, the State filed a motion to terminate the parental rights of Michael Sr. In October 2017, Michael Sr. offered into evidence his own certificate of Indian blood which showed that he is a member of the Oglala Sioux Tribe. The court found that Michael Jr. was eligible for membership and that NICWA applied and, in order to comply with procedures governing notification of the tribe, delayed the termination hearing.

On December 12, 2017, the termination hearing was held. The State first called Jennifer Taylor, who served as the DHHS case manager in this matter from October 2016 to March 2017. Taylor testified that Michael Sr. was difficult to contact and she did not recall him participating in any services offered by DHHS except one team meeting and a few drug tests.

The State then called Jackie Sandersfeld, an employee of an organization that contracted with DHHS to provide visitation services. She testified that Michael Jr.'s foster parents reported that following the limited visits with Michael Sr., Michael Jr. was very agitated and would scream all night.

The State then called Angie Molina who had been Michael Jr.'s foster mother. During her testimony governing problems she had with Michael Jr. following his visits with his natural parents, Michael Sr. interrupted her. He blamed her for the problems she reported. The court said:

> I have -- I have warned you repeatedly. You have decided not to follow my warnings. You have interrupted court on a number of times. I am holding you in contempt. I am ordering that you serve 24 hours in the county jail, and you're removed from the courtroom immediately.

The court referred back to the incident when it announced its decision, saying Michael Sr. was "repeatedly warned," that it was "after I had overlooked another outburst," and that he "want[ed] to verbally attack a witness on the stand."

After Molina's testimony, the State called Theresa Stands, an elder in the Oglala Sioux Tribe, as an Indian Child Welfare Act expert witness. Stands testified that she had read the case files and determined that, based on unaddressed issues of alcohol, drug abuse, and domestic violence, it was not safe for the children to be placed with their parents again. She testified of Sioux traditions that lead to the respect of children such as believing children chose their parents. She testified that using alcohol and drugs was "not cultural" and "not traditional ways. Abuse is never acceptable to raise children in."

The State then called Morgan Weitzel, who served as the DHHS case manager in this matter from June 2017 up until the termination hearing. Weitzel testified that in addition to Michael Sr.'s incarceration from November 2016 to January 2017, he was also incarcerated from May 22 to September 22, for violating a protection order. Weitzel further testified that, throughout the case, Michael Sr. only attended five out of over thirty visitations with Michael Jr. Weitzel testified that Michael Sr. tested positive for methamphetamine on three out of the four drug tests that she was aware of. During her testimony, the court admitted into evidence Michael Sr.'s substance abuse evaluation report from January when he was incarcerated.

According to Weitzel, a DHHS contractor discharged Michael Sr. as a client based on his hostility to one of their employees. During one conversation while he was incarcerated, he expressed a strong desire to get Michael Jr. back and "expressed a strong interest in parenting," but, during a later conversation, he admitted that "he wouldn't actually be parenting his child" but that Michael Jr.'s care would be left up to Katie. Weitzel testified that Michael Sr. never worked with family support on parenting skills or anger management, never worked with a therapist for individual counseling, and never attended nor completed Circle of Security. Finally, Weitzel expressed her opinion that Michael Sr.'s parenting skills had been regressing throughout her time as case manager.

During Weitzel's cross-examination, Michael Sr.'s attorney presented a letter that Michael Sr. had written to Michael Jr. while in jail. Weitzel received it in her office near the end of August 2017. In the letter, he expressed how he missed Michael Jr., thought about him daily, expressed his love, and said, "I'm gonna do whatever it takes to get you back OK I promise." He apologized, "I'm sorry I'm not there holding you right now and playing with you [but after I get out of jail] I will be able to see you all the time!!" (Stylistic errors corrected.) Michael Sr.'s sister testified that her family was willing to do anything they could for Michael Jr., and that their family thought it was important to pass on knowledge of their Sioux traditions.

The court announced a judgment of termination of Michael Sr.'s parental rights. When announcing judgment, the court made it clear that it found Weitzel's testimony more credible than any conflicting testimony. Michael Sr. filed a timely appeal.

## ASSIGNMENTS OF ERROR

Michael Sr. makes three claims on appeal. He claims that the juvenile court committed reversible error by finding the State had established that (1) he had substantially and continuously or repeatedly neglected or refused to provide the juvenile necessary parental care or protection, (2) through the use of a qualified expert witness that continued custody of an Indian child by the parent is likely to result in serious emotional or physical damage to the child, and (3) the termination of his parental rights were in the best interest of the child.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Shayla H. et al.*, 17 Neb. App. 436, 764 N.W.2d 119 (2009). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

- 4 -

## ANALYSIS

### STATUTORY GROUNDS FOR TERMINATION

The county court terminated Michael Sr.'s parental rights pursuant to § 43-292(1), (2), and (6), which setion provides:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interest of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> (1) The parents have abandoned the juvenile for six months or more prior to the filing of the petition;
>
> (2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;
>
> . . . .
>
> (6) Following a determination that the juvenile is one described in subdivision 3(a) of section 43-247, reasonable efforts to preserve and rectify the family if required under section 43-283.01, under the direction of the court have failed to correct the conditions leading up to the determination.

Michael Sr. only assigns as error that the court erred in finding that the conditions set forth in § 43-292(2) exist. He does not assign as error the court's determination that the conditions set forth in § 43-292(1) or (6) also exist. Because the court may terminate parental rights if it happens that "one or more" of the conditions set forth in § 43-292 exist, and because the record supports the court's findings that the conditions set forth in § 43-292(1) and (6) are present, we need not independently review Michael Sr.'s contention that the conditions set forth in § 43-292(2) do not exist. See *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 56, 638 N.W.2d 510, 520 (2002) ("[h]aving determined the statutory ground enumerated in [another subsection of § 43-292] has been proved, we do not consider issues relating to the sufficiency of the evidence concerning the other statutory provisions identified by the trial court as grounds for termination").

### QUALIFIED EXPERT WITNESS TESTIMONY

Michael Sr. next assigns that the county court erred by finding that the State had established beyond a reasonable doubt through the use of a qualified expert witness that continued custody of an Indian child by the parent is likely to result in serious emotional or physical damage to the child. In furtherance of this assignment, Michael Sr. cites to Neb. Rev. Stat. § 43-1505(6) (Reissue 2016) which provides:

> The court shall not order termination of parental rights under this section in the absence of a determination by the court, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

Michael Sr. rightly asserts that this statute provides an additional element the State must prove before terminating parental rights in cases involving Indian children. See *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008). That said, Michael Sr. incorrectly argues that the expert's testimony in this case must "provide a basis for any finding beyond a reasonable doubt that [domestic violence and drug] problems exist and that it would place Michael at risk for serious emotional or physical harm." Brief for appellant at 17. Michael Sr.'s interpretation of § 43-1505(6) was addressed in *In re M.F.*, 290 Kan. 142, 225 P.3d 1177 (2010). In reviewing, the federal statute, 25 U.S.C. 1912(f), which contains language identical to § 43-1505(6), the Supreme Court of Kansas wrote:

> The GAL also takes issue with the Court of Appeals' statement that the qualified expert must "testify that evidence existed to support the State's burden under the ICWA." *In re M.F.*, 41 Kan.App.2d at 935, 206 P.3d 57. The GAL interprets this statement to mean that a qualified expert must offer a specific opinion as to whether or not the State's evidence meets the burden of proof. It seems, rather, that the Court of Appeals' statement is merely a reiteration of the ICWA standard that a decision to terminate parental rights must be based on "evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f). The expert need not opine on the ultimate issue of whether the State met its burden of proof. But the expert's opinion must support the ultimate finding of the district court that continued custody by the parent will result in serious emotional or physical damage to the child. See, e.g., *Marcia V.*, 201 P.3d at 506; *Steven H. v. DES*, 218 Ariz. 566, 572, 190 P.3d 180 (2008); *State ex rel. SOSCF v. Lucas*, 177 Or.App. 318, 326, 33 P.3d 1001 (2001), *rev. denied* 333 Or. 567, 42 P.3d 1245 (2002).

*In re M.F.*, 290 Kan. at 155-56, 225 P.3d at 1186. We, likewise, construe § 43-1505(6) to require that the expert's opinion must support the ultimate finding of the court, i.e. that continued custody by the parent will likely result in serious emotional or physical damage to the child.

In this case, the GAL documented serious and alarming instances of domestic abuse by Michael Sr. toward Katie which led Katie to procure a protection order. Michael Sr. violated the protection order by breaking into her home and was incarcerated for that violation. The GAL also reported abusive behavior of Michael Sr. toward Michael Jr. and the record sufficiently documents Michael Sr.'s issues with substance abuse. These allegations led to the State's filing of a § 43-247(3)(a) petition seeking to adjudicate Michael Jr. as falling within the court's jurisdiction. Specifically, the State alleged Michael Sr.'s use of controlled substances, domestic violence, and lack of stable housing placed Michael Jr. at risk of harm. In connection with a plea arrangement relating to Michael's violation of Katie's protection order, Michael opted not to contest and admitted the allegations in the petition, which allegations included "risk of harm" to Michael Jr. The record at the termination hearing also contained testimony from Michael Sr.'s caseworkers which documented his substance abuse problems, his periods of incarceration for unlawful conduct, his lack of visitations with Michael Jr. after his removal, his defiance of the court in connection with legal proceedings, his lack of participation in services offered by DHHS designed to assist him, and his extensive criminal record.

In connection with satisfying the requirements of § 43-1505(6), the State offered Stands' testimony, qualified and unchallenged on the record as an Indian Child Welfare Act expert, who testified that she had reviewed the case file and determined that, based upon unaddressed issues of alcohol, drug abuse, and domestic violence, it was not safe for Michael Jr. to be placed with Michael Sr. again. This clearly constituted testimony of support in connection with the ultimate finding by the court that continued custody by Michael Sr. will likely result in serious emotional or physical damage to Michael Jr. Michael Sr.'s argument is without merit.

BEST INTERESTS

Michael Sr. next argues that the court erred in finding that termination of his parental rights was in the child's best interest.

A juvenile's best interests is the primary consideration in determining whether parental rights should be terminated; however, a parent's interest in the accuracy and justice of the decision is also a commanding one. *Kenneth C. v. Lacie H.*, 286 Neb. 799, 839 N.W.2d 305 (2013). With respect to the best interests of a juvenile in termination of parental rights proceedings "the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child." *In re Interest of Athina W.*, 21 Neb. App. 624, 634, 842 N.W.2d 159, 166 (2014). A finding that termination of parental rights is in the best interest of the child must be made by clear and convincing evidence. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016).

Courts presume that the best interests of a child are served by having a relationship with his or her parent. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State proves that the parent is unfit. *Id*. Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id*.

Michael Sr. claims that the court erred in finding that the child's best interests are served by terminating his parental rights. Because we concur with the court's finding that custody of Michael Jr. is likely to result in serious emotional and physical harm to Michael Jr., we reject Michael Sr.'s claim. As we noted before, the GAL's report provided alarming allegations of domestic violence directed at Katie, substance abuse, and abusive behavior directed at Michael Jr. These activities apparently resulted in Katie seeking and obtaining a protection order. In direct defiance of that order, which appears to be a pattern with Michael Sr., he broke into Katie's home and was arrested for his violation. These same activities also led the State to file an adjudication petition alleging that the use of controlled substances, domestic violence, and lack of stable housing placed Michael Jr. at risk of harm. Michael Sr. did not contest these allegations, then did little or nothing to reunify with Michael Jr. when provided the opportunity. The record contains clear and convincing evidence that Michael Sr. is an unfit parent for Michael Jr. and it is in Michael Jr.'s best interest that Michael Sr.'s parental rights are terminated.

Michael Sr.'s letter to Michael Jr. provided some support to the claim that he should get another chance. However, Michael Sr.'s actions have not demonstrated the commitment that must accompany parenthood and that he promised in the letter. Instead, he has demonstrated repeatedly

that he is either incapable or unwilling to act as a reasonable parent. "Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity." *In re Interest of Octavio B. et al.*, 290 Neb. 589, 600, 861 N.W.2d 415, 425 (2015). We cannot require the State to keep Michael Jr. in foster care any longer to await the day when Michael Sr. might be fit to be a father to him.

CONCLUSION

For the reasons discussed above, we affirm the order terminating Michael Sr.'s parental rights.

AFFIRMED.